The Hovaters were divorced in September 1989. There were two children born during their marriage. The judgment of divorce incorporated an agreement of the parties as to the custody of the children and their support. The two portions of the judgment pertinent to this appeal provided:
 (a) "[T]he parties shall jointly share the custody of the minor children, namely Amy Hovater, age eight (8) and Abby Hovater, age four (4), with the [mother] having primary physical custody during the regular school year and the [father] having primary physical custody during the summer school vacation period.
". . . .
 (b) "It is further Ordered that both parties shall maintain their residence within the Mt. Hope School District so that the children will attend Mt. Hope schools and if either party moves outside of the school district or fails to send the children to Mt. Hope schools physical custody will [be] vested in the other party during the school year and the failing party will have physical custody during the summer vacation months."
The two quoted provisions were separated in the judgment by extensive provisions for support of the children, visitation, and division of real and personal property. A motion to set aside the judgment was filed by the mother the day following its entry. *Page 463 
The father, five days later, filed a petition for an order of contempt and to modify the judgment as to the physical custody of the children in accord with the provisions of (b) set out hereinabove. The petition of the father to modify charged that the mother had enrolled the older child in a school other than the Mt. Hope school.
The posttrial motion of the mother was duly heard before the court and denied. Subsequently the mother filed a petition to modify custody, alleging that the restrictive custodial reversionary clause found in the original decree was detrimental to the best interests and welfare of the children. The petitions to modify custody of the children were heard by the court and judgment was entered on December 11, 1989.
That judgment, in summary, found that the mother had violated the terms of the judgment of September 12, 1989 by removing the older child from the Mt. Hope school and enrolling her in a Decatur, Alabama school. Such action by the mother invoked the operative language of the September judgment as to a change of physical custody of the children. The court further found that there had been a material change of circumstances since the September judgment and that a change of physical custody of the children would be consistent with the best interests of the children. The court then ordered and adjudged that the joint custody of the children by the parties would continue, but because of the operative provisions of the original judgment of divorce and because of a material change of circumstances, it would be consistent with the best interests of the children that their physical custody be changed from the mother to the father during the school year and back to the mother during the summer. There was also a new determination of child support due from the father.
The mother appeals and contends that the trial court abused its discretion in changing physical custody and decreasing child support.
Initially, we find that the trial court erred in effectuating the custodial reversionary clause found in the original decree. We do not reach this decision casually. We rely on a comparative analysis with the analogous line of cases disfavoring escalated child support payments. See Morrison v.Kirkland, 567 So.2d 363 (Ala.Civ.App. 1990); Forlini v.Forlini, 455 So.2d 855 (Ala.Civ.App. 1983); Langford v.Langford, 441 So.2d 962 (Ala.Civ.App. 1983).
In Morrison we found that the disfavor with escalated child support payments stems from the fact that there is no evidentiary basis for the determination of the future events and that there exists an adequate procedure for modification when changes in circumstances do occur. We determined inMorrison that the trial court could not speculate on the future ability of the parent to pay or on the future needs of the children. Likewise, in our situation, who is to say that it will be in the children's future best interests to stay at the Mt. Hope school or to even reside in the Mt. Hope community? We realize that in giving effect to the custodial reversionary clause the trial court was simply attempting to effectuate the agreement of the parties. We find, however, the custodial reversionary clause in this instance to be of no effect because it is premised on a mere speculation of what the best interests of the children may be at a future date. We have found that an agreement of the parents is conclusive of the children's best interests only as long as the status of the parties at the time remains unchanged. Means v. Means, 512 So.2d 1386
(Ala.Civ.App. 1987). The trial court's reliance on the operative language of the reversionary clause in changing the custodial arrangement in this instance is misplaced.
In reaching its decision to change the custodial arrangement, the trial court did not rely solely on the operative language of the reversionary clause, but additionally found that the change in custody was warranted because there had been a material change in circumstances since the September judgment and that a change of physical custody would be consistent with the best interests of the children. We must now determine whether the trial court used the correct standard in modifying the prior custodial arrangement. *Page 464 
Generally, the party seeking to modify a prior custodial decree bears the stringent burden of proving that the proposed change in custody will "materially promote" the children's best interests and welfare. The benefits of moving the children must outweigh the traumatic effects caused by the uprooting of the children from their present custodian. Ex parte McLendon,455 So.2d 863 (Ala. 1984). Where there is no prior order granting exclusive physical custody to one parent, however, the McLendon
standard is not applicable. Ex parte Couch, 521 So.2d 987
(Ala. 1988). If exclusive physical custody has not been awarded to one parent, the "best interests and welfare" of the children standard applies. Couch; Scott v. Scott, 563 So.2d 1044
(Ala.Civ.App. 1990).
Here, the parties initially agreed that they would "jointly share the custody of the minor children . . . with the [mother] having primary physical custody during the regular school year and the [father] having primary physical custody during the summer school vacation period." We conclude that, by the use of the term "joint custody" and by the division of physical custody, the parties and the trial court envisioned a "joint legal" and "joint or split physical" custodial arrangement. Because neither party was awarded exclusive physical custody, the proper standard of review was the "best interests and welfare" of the children as opposed to the more stringent burden established by McLendon. See Means.
The trial court applied the correct standard in its review of the custody arrangement. We must now determine if the trial court correctly applied the law to the facts.
The record reveals that a change in the mother's circumstances occurred after the divorce. The change encompassed a residential move to Moulton, Alabama, a city eighteen miles from Mt. Hope; a new job in Decatur, Alabama; and the enrollment of the older daughter into a Decatur school, a school in close proximity to the mother's place of employment. The mother testified that the change in residence was necessitated by the initial decree, in which the marital home was awarded to the father. She testified that there were no apartments in Mt. Hope nor were there any houses for reasonable rent. The evidence further revealed Mt. Hope to be a small rural community with no opportunities for employment. The mother testified that she had no familial support in Mt. Hope because her family resides elsewhere in the county and there is a great deal of animosity between herself and the father's family, who reside in Mt. Hope. She testified that she moved the older daughter to the private school in Decatur so that she would receive more personal attention than she would have received in the Mt. Hope school. The daughter's teacher testified that initially the child had problems but had adjusted well, was making A's and B's, and appeared to be a happy and well-adjusted child.
The father asserts that the mother's change of residences and the daughter's change of schools is contrary to the initial divorce decree, in which the parties had agreed that the best interests of the children would be served by the mother's remaining in the Mt. Hope area and the daughter's remaining at the Mt. Hope school. He contends that the trial court was correct in enforcing the initial decree. We have previously discussed the automatic reversionary clause found in the divorce decree and determined that the trial court erred in its effectuation of it. We deem further discussion to be unnecessary.
In an effort to substantiate his "best interests and welfare" of the children argument, the father testified that since the divorce the mother has been seen on several occasions at night clubs. There was testimony, however, that the mother does not drink and went to the night clubs only at the request of her girl friends in their effort to "cheer" her up. There was further evidence that the mother had sexual relations with another man on two occasions after the divorce had been filed but prior to the final decree. The parent seeking modification must demonstrate that such conduct has had a detrimental effect on the children. Taylor v. Taylor, *Page 465 563 So.2d 1049 (Ala.Civ.App. 1990). Here, there was no such demonstration.
The father further asserts that since the children have been in the mother's custody they have begun to use "terrible" language and they have been unkempt. He testified that it would be in the children's best interests for them to reside in the same home in which they have lived their whole lives, to attend the same school and church, and to live in close proximity to their paternal grandparents.
The record reveals that there is a great deal of animosity between the parties and between the mother and the paternal grandparents. We find a detailing of the animosity to be unnecessary. However, we would note that this lack of affection has been demonstrated through the alleged use of guns, foul gestures and language, harassing telephone calls, and warrants for each other's arrest.
We recognize the well-established rule that custody modification is a matter within the discretion of the trial court, and when such cases are presented to the trial court ore tenus, its judgment is presumed to be correct and will not be altered absent an abuse of discretion or a showing of plain and palpable error. Wesson v. Wesson, 507 So.2d 536
(Ala.Civ.App. 1987).
However, any modification of child custody must be premised upon a "material" change of circumstances occurring since the prior decree. Such change of circumstances must be shown to affect the best interests of the child. We have carefully considered the record, and we find that no material change which was contrary to the best interests of the children occurred in the three months between the decrees. Jenkins v.Jenkins, 395 So.2d 1045 (Ala.Civ.App. 1981).
The trial court determined that a change of circumstances had occurred and that a change in physical custody would be consistent with the best interests of the children. The changes of circumstances in this case were promulgated by the divorce decree. The mother was forced to find affordable housing and a job as a result of the decree. When there were no housing or employment opportunities to be found in the Mt. Hope area, the mother was forced to look elsewhere. Because of the animosity between the parties and between the mother and the paternal grandparents, the mother lacked any semblance of familial support. In this day of the single, working mother, we deem familial support to be important. The move to Moulton put the mother and children within ten miles of the maternal grandmother's residence. The evidence reveals that the maternal grandmother has been very helpful in keeping the younger daughter while the mother and older daughter are respectively at work and at school.
The party seeking modification must not only prove that a change in circumstances has occurred but must also prove that a change in custody will be in the "best interests and welfare" of the children. Means.
The "best interests and welfare" standard focuses on the particular child's adjustment to his present environment, i.e. home, family, school, and community. Here, there was no evidence presented to signify that the children were not adjusting to their new environment. The older daughter's teacher testified that at the time of the hearing she was making A's and B's and appeared to be a happy and well-adjusted child. The father's allegations concerning the conduct of the mother also fail to satisfy the "best interests and welfare" standard for a modification in child custody. The fact that the trial court awarded the mother "joint custody" with primary physical custody in the summer months connotes that it found the mother to be a fit and proper person to have custody of the children. The father simply failed to meet his burden in establishing conditions requiring a change in custody. The trial court erred in finding that a change in the prior decree was "consistent with the best interests" of the children.
Accordingly, this case is reversed and the cause remanded with directions that the trial court restore the custodial arrangement, including child support, as provided in the original decree. *Page 466 
We take this opportunity to point out our concerns with the award of "joint custody" in this case. Perhaps the trial court used the concept of "joint custody" to assuage the egos of the parties. In accepting the parties' agreement and in modifying the initial order, the trial court perhaps failed to consider such factors as the ability of the parents to cooperate in rearing their children and parental methods for resolving disputes regarding major decisions about the children. The animosity between these parties had become so great that by the time of the hearing the parties were not even speaking.
Well over half of the states in this country have "joint custody" statutes which delineate when an award of joint custody should be made. The evolvement of joint custody in Alabama has been piecemeal and by way of judicial judgments. Until we have legislative guidance on this confusing and not yet settled concept of joint custody, we would suggest that the trial courts act cautiously in awarding joint custody, taking into special consideration the attitudes and personalities of the parents. An award of joint custody may not always be in the children's best interests. See Singer Reynolds, A Dissent onJoint Custody, 47 Md.L.Rev. 497 (1988); Zimmerman, The Problemsof Shared Custody, 4 Cal.Law. 25 (1984); Skoloff, JointCustody: A Jaundiced View, 20 Trial 52 (1984); Levy Chambers,The Folly of Joint Custody, 69 Ill.B.J. 412 (1981); Reece,Joint Custody: A Cautious View, 16 U.C. Davis L.Rev. 775 (1983).
This opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.