THIGPEN, Judge.
This is a custody case.
The record reveals that R.L.H. (father) and J.A.B. (mother) divorced in February 1991. At that time, the trial court awarded the parties joint custody of the minor child. Pursuant to this award, each parent had primary custody of the child for six months of each year.
In November 1991, the mother filed a petition for a modification of custody and for pendente lite relief, alleging that she had been unable to exercise her visitation rights with the child during the father’s period of primary custody. The father filed a counter-petition in December 1991, alleging that the child was being sexually abused in the mother’s home, and requesting that primary custody of the child be awarded to him. Numerous pleadings and temporary orders followed. Ultimately, following ore tenus proceedings, the trial court entered an extensive order, detailing the history of the ease and making specific findings, including its finding that there had been a material change in circumstances and that the joint custody arrangement was not in the best interests of the child. The trial court awarded exclusive custody of the child to the mother, subject to the father’s visitation, and it ordered the father to pay child support. The father appeals.
The dispositive issues on appeal are whether the trial court abused its discretion in awarding custody to the mother, and whether the trial court erred by allowing testimony regarding polygraph examinations.
In child custody cases, when evidence is presented ore tenus, the judgment of the trial court is presumed correct, and that judgment will not be reversed absent a showing of plain and palpable abuse of discretion. Reuter v. Neese, 586 So.2d 232 (Ala.Civ.App.1991). When there is a prior custody decree, the party seeking to modify custody must show that a material change in circumstances has occurred since the last decree, and that a change in custody will *484 materially promote the child’s best interests. Further, it must be shown that the benefits of the requested change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, 455 So.2d 863 (Ala.1984). When custody has not previously been determined, however, the McLendon standard does not apply; instead, the applicable standard is the best interests and welfare of the child. Ex parte Couch, 521 So.2d 987 (Ala.1988). Additionally, in initial custody determinations, the parents stand on equal footing, with no presumption favoring either party. Poe v. Capps, 599 So.2d 623 (Ala.Civ.App.1992).
In this case, there was no prior custody adjudication favoring either party; therefore, the best interests standard applies. Couch, supra. In determining what is in the best interests of the child, “the trial court should consider a variety of factors, including the sex and age of the children; their emotional, social, moral, material, and educational needs; and the characteristics of those seeking custody, including age, character, stability, mental and physical health, and their respective home environments.” Santmier v. Santmier, 494 So.2d 95, 96 (Ala.Civ.App. 1986).
It appears of record that allegations of sexual abuse arose when the father reported to the Shelby County Department of Human Resources (DHR) that the child had allegedly been sexually abused by the mother’s current husband (stepfather) and by the stepfather’s brother. The father refused to allow the mother to exercise her visitation with the child. As a result of the sexual abuse allegations, a pendente lite order was entered placing the child in the custody of the father and restricting the mother’s visitation. The child remained in the custody of the father until July 1992, when the child was placed in the mother’s custody. The reeord discloses that, after that order, the father had refused to return the child to the mother, concealed the child’s whereabouts, and delivered confidential documents regarding the abuse allegations to the news media. During this period of time, extensive investigations into the allegations of sexual abuse were conducted by the Alabama Bureau of Investigation (because one alleged abuser was a law enforcement officer) and by DHR.
The mother testified that, at the time of trial, the child was four years old and was attending preschool. She testified that no sexual abuse of the child had occurred in her presence. She further testified that there had been little or no opportunity for the stepfather to commit sexual abuse of the child, and that the stepfather’s brother was only around the child at family functions. She also testified that on her first visitation with the child after the sexual abuse allegations, she took the child for a physical examination, which revealed no evidence of sexual abuse.
The father testified that the child had indicated that he had been sexually abused by the stepfather and the stepfather’s brother. The father reported the accusations to DHR, and he testified that an investigation was conducted; however, it is noteworthy that the DHR social workers involved in the investigation were not offered to testify at trial.
The stepfather testified that he has a good relationship with the child, and he vehemently denied engaging in any conduct that could be construed as sexual abuse of the child. The stepfather’s brother also testified that he had never engaged in any such conduct, and he further testified that prior to the allegations, he had only seen the child six or eight times at family gatherings, and that he had never been alone with the child.
The court-appointed psychologist prepared a report detailing counseling sessions with the child, the mother, the father, and the stepfather. In this report, the psychologist stated that the child was “emotionally conflicted” and that he was “experiencing significant levels of both anxiety and depression.” He further stated:
“While emotional conflict of this sort is frequently associated with children that have been either physically or sexually abused, it is also found in children who have experienced other stressors such as chronic parental discord. The finding of this emotional conflict is not sufficient to conclude that sexual abuse [occurred]. In *485 fact, [the child] did not display some very-important signs which frequently occur after sexual abuse, such as excessive concern over sexual matters, seductive behavior, [reenacting] the sexual abuse, or displaying inappropriate interpersonal boundaries.”
The psychologist also indicated that the mother and the father experienced “significant problems in their post-divorce interaction,” suggesting “hostility and mistrust” toward each other, and that this could account for some of the child’s conflicts. He concluded that the child was “exhibiting signs of psychological distress primarily as the result of ongoing post-divorce conflict between his parents.” The trial court expressly found the conclusions of the psychologist to be significant.
The trial court found that the joint custody arrangement was no longer in the best interests of the child, and it awarded custody to the mother, expressing that “this Court can find no substantial credible evidence to support the allegations of sexual abuse,” and that it was “reasonably satisfied from the evidence that [the child’s] problems are associated with psychological distress resulting primarily from the ongoing post-divorce conflict between his parents rather than any alleged sexual abuse.” The court further found that, although the father loves the child, the father “has exhibited unstable and more irrational conduct and behavior” than the mother, and that the father has allowed his bitterness towards the mother and the stepfather “to misguide him” in his post-divorce relationship with the child.
In child custody cases, the trial judge, who observes firsthand the parties and hears the testimony, is presumed to correctly discharge his' responsibility to safeguard the child’s best interests. Absent an abuse of discretion, we presume that the court correctly determined what is in the best interests of the child. Smith v. Smith, 448 So.2d 381 (Ala.Civ.App.1984). This presumption of correctness is especially applicable where, as here, the evidence is conflicting. Ex parte P.G.B., 600 So.2d 259 (Ala.1992). An award of joint custody should be entered cautiously as it is not always in the child’s best interests. Hovater v. Hovater, 577 So.2d 461 (Ala.Civ.App.1990). The record of the case sub judice supports the trial court’s determination that awarding primary custody to the mother was in the best interests of the child. We find no abuse.
The father also contends that the trial court erred in allowing testimony from polygraph examiners who administered polygraph tests to the stepfather and his brother. The record discloses that the trial court heard testimony from the examiners regarding their qualifications and regarding the questions that were asked in the examinations; however, the court refused to admit the answers given or the results of the tests, The results were sealed and placed in the file as an offer of proof only. The trial court expressly stated in its order that it did not consider the testimony of the polygraph examiners, that it specifically declined “to give any relevance, weight, or credibility to the testimony as offered,” and that the testimony was allowed only as an offer of proof submitted by the mother. The record contains ample evidence, without considering the polygraph examinations, to support the trial court’s findings and determination regarding custody. Even if the trial court erred in allowing testimony regarding the polygraph examinations, any error was harmless. Rule 45, A.R.App.P. See also Lacaze v. Lacaze, 621 So.2d 298 (Ala.Civ.App.1993), and Reid v. Flournoy, 600 So.2d 1024 (Ala.Civ.App.1992).
Our thorough review of the record, applying the attendant presumptions, discloses no error. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.