On Application for Rehearing
The opinion of this court issued on November 15, 2002, is withdrawn, and the following is substituted therefor.
Katerina Korn ("the wife") appeals from a judgment of the Jefferson Circuit Court divorcing her from Michael Korn ("the husband"); awarding the parties joint legal custody of their three-year-old daughter ("the child"), subject to the wife's remaining in the United States with the child; awarding the wife $100 per month in periodic alimony, subject to her remaining in the United States and not being employed; and directing the parties to be responsible for their own attorney fees.
The wife and the husband are natives of the former Union of Soviet Socialist Republics who emigrated to the State of Israel with their respective families; they met in Israel as teenagers and married in 1997. Soon after the parties' marriage, the husband, a violinist, moved to Alabama to work for a symphony orchestra, having been granted a visa as an "O-1" nonimmigrant alien by the United States Immigration and Naturalization Service ("INS"), a classification for artists with extraordinary abilities (see 8 U.S.C. § 1101(a)(15)(O)(i) and8 C.F.R. § 214.2(o)(1)(ii)(A)(1) (2002)). The wife followed the husband to Alabama in December 1997, entering the United *Page 341 
States pursuant to an "O-3" nonimmigrant visa for spouses of "O-1" aliens (see 8 U.S.C. § 1101(a)(15)(O)(iii) and 8 C.F.R. § 214.2(o)(6)(iv) (2002)). Although the husband has maintained employment following his arrival in the United States as a violinist and a music instructor, the wife's "O-3" visa does not allow her to accept employment without employment authorization from the INS. See 8 C.F.R. § 214.2(o)(6)(iv) (2002).
The child was born in May 1999, after the parties had begun experiencing marital difficulties, mainly concerning financial matters and tensions between the wife and the husband's family. The record reveals that the husband has adhered to a rigorous work schedule, which involves frequent rehearsals and symphonic performances as well as giving music lessons, and that he has limited free time. The wife served as the primary caregiver of the child during her infancy; before the parties' separation, the child had never been left with a babysitter.
During March 2000, the wife and the child returned to Israel for what was originally scheduled to be a one-month visit. However, the parties quarreled by telephone during the wife's visit and reached a decision to separate permanently. The wife sent the husband a letter demanding that the husband send her $12,000 as a condition to her returning with the child to the United States for divorce proceedings. In May 2000, the husband initiated litigation in Israel, under the Hague Convention on the Civil Aspects of International Child Abduction of October 25, 1980, seeking to require the wife to return the child to the United States. A judgment was rendered in September 2000 by an Israeli family-affairs court directing the wife to return with the child to the United States; however, the wife did not return until May 2001, at which time the husband initiated divorce proceedings in the Jefferson Circuit Court.
In his complaint, the husband alleged that there had been an irretrievable breakdown of the parties' marriage; he sought, among other things, sole custody of the child. The husband also sought, and obtained, an injunction preventing the wife from again removing the child from the United States until a final disposition of the divorce proceedings. The wife answered the complaint and counterclaimed, seeking, among other things, alimony, attorney fees, and sole custody of the child. The trial court awarded primary custody of the child to the wife, pending a final hearing, and the husband was directed to pay the wife $523 per month as pendente lite child support and $100 per month as pendente lite alimony.
In June 2001, the husband moved for a psychological evaluation of the wife, claiming that she had engaged in "erratic" behavior during the course of their marriage; he agreed to undergo a similar evaluation. The trial court granted the husband's motion, and a psychologist, Dr. Karen Turnbow, was appointed to evaluate the parties and the child. After conducting her evaluations, Dr. Turnbow submitted a report to the trial court identifying, among other things, various strengths and weaknesses in each party's psychological profile and summarizing the child's interaction with each of her parents.
The case was tried between December 17, 2001, and December 20, 2001, during which a number of witnesses, in addition to the parties, gave testimony. In January 2002, the trial court entered a judgment divorcing the parties. In its order, the trial court found, among other things, that the wife had been the child's primary caregiver; that the husband had worked as a musician and a teacher for "long hours, up to 7 days per week"; that the wife had *Page 342 
"shown no ability to gain employment" in the United States; that both parties had testified concerning the currently violent political and military situation in Israel; that the wife planned to return to Israel, with or without the child, within a "reasonable time" after the court entered its judgment; and that "it would be in the best interest of the minor child that [the child's] residence should be" in the United States.
Based on those findings, the trial court awarded the husband and the wife joint legal custody, with the wife to have physical custody of the child except for two weekends per month, one month each summer, various family birthdays and holidays, and such other times as agreed upon by the parties. The trial court's judgment also specified that "should the [wife] decide to leave the [United States] to reside elsewhere, this shall be deemed a material change in circumstances such that the legal custody shall immediately change and vest [in the husband] without further legal proceedings . . . and the [wife] will immediately surrender physical custody."[1] The husband's pendente lite child-support obligation was maintained in force, and each party was awarded the personal property in their respective possession and allocated their individual debts; moreover, the husband was made responsible for paying all unpaid debts of the marriage. Finally, each party was made responsible for paying his or her counsel.
The wife subsequently filed a postjudgment motion to alter, amend, or vacate the judgment, challenging, among other things, the provision of the judgment automatically divesting her of primary physical custody of the child should she choose to reside in a country other than the United States, the omission of any reference in the judgment to alimony, and the absence of any award of attorney fees. After a hearing, the trial court made various changes to its judgment; among these was a new provision directing the husband to pay the wife $100 per month in periodic alimony, but stating that that obligation "shall terminate upon the [wife's] becoming employed or [if she] no longer resides in the [United States] or leaves [the United States] for a period in excess of thirty (30) days." However, the trial court's judgment as to custody and attorney fees remained materially unchanged.
On appeal, the wife contends that the trial court erred in awarding joint custody of the child to the parties and in providing that custody of the child would vest automatically in the husband if she relocates from the United States. She also contends that the trial court's award of $100 per month in periodic alimony, which is conditioned upon her remaining unemployed and residing in the United States, was an abuse of discretion. Finally, the wife contends that the trial court should have directed the husband to pay her attorney fees.
In contending that the trial court erred in its judgment insofar as it awarded joint custody, the wife argues that the trial court should have awarded her sole custody of the child because, she says, the husband is incapable of being a "team player," i.e., cooperating with the wife, with respect to decisions affecting the child. She also argues that the provision of the trial court's judgment directing that primary custody of the child will revert to the husband, without further legal proceedings, if she leaves the United States is contrary to Alabama precedents. *Page 343 
The Legislature of Alabama has stated that the policy of this State is "to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage." Ala. Code 1975, § 30-3-150. To that end, trial courts are to consider, "in every case," an award of joint custody, i.e., joint legal custody and joint physical custody. Ala. Code 1975, §§ 30-3-151(1)-(3) and 30-3-152(a). Among the factors that trial courts are to consider in determining whether to award joint custody are (1) the existence of an agreement between the parents on joint custody; (2) the parents' ability to cooperate and to make decisions jointly; (3) each parent's ability to encourage a close relationship with the other parent; (4) any risk of domestic violence; and (5) the geographical proximity of the parents. Ala. Code 1975, § 30-3-152. These factors supplement traditional, common-law custody factors such as the age and needs of the children involved and each parent's ability to provide for those needs (see Wolf v. Wolf, 666 So.2d 17, 19 (Ala.Civ.App. 1995)).
Although the wife points to an opinion, expressed in Dr. Turnbow's report, that the husband "tend[s] to assert control in dealing with others" and cites certain disagreeable conduct exhibited toward her in visitation and dental-treatment situations involving the child, evidence was presented to support a determination that joint custody, rather than sole custody vested in the wife, would be in the child's best interests. Although the wife was the primary caregiver for the child before the parties' separation, a number of witnesses testified at trial that the husband has been an active caregiver since the child's return from Israel, performing tasks such as feeding and bathing her, changing her clothes and diapers, and playing with her. Dr. Turnbow's psychological report noted the husband's creativity and understanding with respect to disciplining the child, as well as the child's animated, affectionate, and playful demeanor in interacting with the husband. In contrast, Dr. Turnbow observed that the child was solemn and reserved in the presence of the wife, although she reported that the child was "comfortable" in each parent's presence. Moreover, there was evidence indicating that while in the wife's sole care, the child developed such a severe case of juvenile-tooth decay that extensive dental treatment, including both root-canal therapy and the installation of stainless-steel tooth crowns, was later prescribed and undertaken at the husband's expense. The trial court could properly have concluded that the child, as she matures, would benefit from frequent contact with both the husband and the wife, as opposed to being in the sole custody of the wife.
With respect to the custodial-reversion clause in the trial court's judgment, the wife cites Hovater v. Hovater, 577 So.2d 461 (Ala.Civ.App. 1990). In Hovater, this court held that a trial court, considering whether to modify custody as to two children, erred in giving effect to a provision of the parties' earlier divorce judgment mandating that if the children's mother moved outside of a particular school district or failed to send the children to that district's schools, physical custody of the children during the school term would automatically vest in their father. The Hovater court reasoned:
 "[W]e find that the trial court erred in effectuating the custodial reversionary clause found in the original decree. We do not reach this decision casually. We rely on a comparative analysis with the analogous line of cases disfavoring escalated child support payments. See Morrison v. Kirkland, 567 So.2d 363
(Ala.Civ.App. 1990); Forlini v. Forlini, 455 So.2d 855
(Ala.Civ.App. 1983); Langford *Page 344 v. Langford, 441 So.2d 962 (Ala.Civ.App. 1983).
 "In Morrison we found that the disfavor with escalated child support payments stems from the fact that there is no evidentiary basis for the determination of the future events and that there exists an adequate procedure for modification when changes in circumstances do occur. We determined in Morrison that the trial court could not speculate on the future ability of the parent to pay or on the future needs of the children. Likewise, in our situation, who is to say that it will be in the children's future best interests to stay at the Mt. Hope school or to even reside in the Mt. Hope community? . . . [T]he custodial reversionary clause in this instance [is] of no effect because it is premised on a mere speculation of what the best interests of the children may be at a future date. . . . The trial court's reliance on the operative language of the reversionary clause in changing the custodial arrangement in this instance is misplaced."
577 So.2d at 463. To like effect are Scacca v. Scacca, 694 So.2d 1, 4
(Ala.Civ.App. 1997) (holding that the petitioning party did not meet the burden of proving necessity of change in custody despite evidence of custodian's intent to move child from county specified in custodial-reversion clause), and Moore v. Moore, 585 So.2d 66, 68
(Ala.Civ.App. 1991) (holding that the party seeking a change in custody must show that proposed relocation of party who has custody would have adverse effect on child).
The husband argues that Hovater is inconsistent with the Alabama Supreme Court's decision in Ex parte Monroe, 727 So.2d 104 (Ala. 1999). In Monroe, a 1993 divorce judgment provided that the mother would have custody of the parties' three-year-old son. In 1996, the father petitioned for a modification of custody, alleging that the mother had received a job transfer and that she would be moving to Michigan and taking the son with her. The trial court conducted a hearing, at which it heard the testimony of both parties, members of the child's extended family in Marshall County, Alabama, and several psychological experts regarding the effect of the proposed move on the son. After the hearing, the trial court concluded that the father had met his burden under Exparte McLendon, 455 So.2d 863 (Ala. 1984). Accordingly, the trial court modified its custody award to provide that the child would be placed with the father if the mother moved to Michigan.
This court reversed the trial court's judgment, holding that the mother's proposed move to Michigan was insufficient as a basis for a modification of custody. The Alabama Supreme Court reversed the court's judgment, concluding, in effect, that this court had substituted its judgment for that of the trial court. The supreme court stated:
 "The trial court analyzed testimony given by various experts, counselors, and family members and from that testimony determined that it was in the best interest of the child to stay in Alabama close to his father and to the child's very supportive extended families. We cannot say the trial judge's determination was clearly erroneous or against the great weight of the evidence; its judgment was not plainly and palpably wrong."
Ex parte Monroe, 727 So.2d at 106-07.
Monroe is distinguishable because it did not deal with the effect of a speculative future change in the custodial parent's residence, but with the modification of custody after an extensive ore tenus proceeding specifically directed to the impact on the child of an impending change of residence. In other words, the change-of-custody *Page 345 
order in Monroe was based on evidence as to the child's current best interests, not upon speculation as to what his best interests might be at some point in the future. The problem with an automatic custodial-reversion clause, of course, is that it "is premised on a mere speculation of what the best interests of the child may be at a future date." Hovater, 577 So.2d at 463.
The husband urges this court to affirm the trial court's custodial-reversion clause in spite of Hovater, arguing that the restriction is broader than the single-school-district limitation inHovater, that public policy favors giving effect to such clauses, and that geographic limitations on the residency of custodial parents have been upheld in previous Alabama cases. However, the holding in Hovater is not a function of the size of the territory specified in a custodial-reversion clause, but is based upon the principle that a relocation of a custodial parent is not necessarily a material change in circumstances warranting a change of custody in every case. Where primary physical custody is awarded to one parent, as in this case, Alabama law requires a trial court, in determining whether that custodial arrangement should be altered in the future, to ascertain whether a material change in circumstances has occurred since the last custody judgment was entered, whether a change of custody will materially promote the child's best interests, and whether the benefits of changing custody outweigh the disruption of uprooting the child. See Ex parte McLendon, 455 So.2d 863,865-66 (Ala. 1984); Ex parte Johnson, 673 So.2d 410, 413 (Ala. 1994). In other words, a custodial parent's change in residence is but one factor
for the trial court to consider in deciding whether custody should be modified. Ex parte Murphy, 670 So.2d 51, 53 (Ala. 1995).
There is a difference between a judgment placing a current limitation upon the residence of a child's primary custodian and a judgment that mandates that custody be automatically changed when a custodian changes his or her locale. In this regard, we note that Hovater's condemnation of custodial-reversion clauses is consistent with family-law precedents in our sister states. See, e.g., In re Marriage of Seitzinger,333 Ill. App.3d 103, 775 N.E.2d 282, 266 Ill. Dec. 720 (2002); Zeller v.Zeller, 640 N.W.2d 53, 58 (N.D. 2002); Carter v. Kratzenberg,209 A.D.2d 990, 991, 619 N.Y.S.2d 456, 456 (1994); Wilson v. Wilson,12 Va. App. 1251, 1255, 408 S.E.2d 576, 579 (1991); Emerick v. Emerick,5 Conn. App. 649, 659, 502 A.2d 933, 938 (1985).
Thus, we conclude that while the trial court's award of joint legal custody of the child to both the husband and the wife, with the wife having primary physical custody, was not improper, its provision that physical custody of the child will devolve upon the husband if the wife leaves the United States amounts to an abuse of its discretion. We therefore reverse the custody portion of the trial court's judgment and remand the case for that court to enter a new custody judgment consistent with § 30-3-150 et seq., Ala. Code 1975, as well as with Hovater and its progeny.
We now turn to whether the trial court's alimony award of $100 per month, which is conditioned upon the wife's remaining unemployed and her remaining in the United States, amounts to an abuse of its discretion. Under Alabama law, periodic alimony "is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage." O'Neal v. O'Neal, *Page 346 678 So.2d 161, 164 (Ala.Civ.App. 1996). In making the decision to award alimony, the trial court may consider several factors, including "the length of the marriage, the current financial circumstances of the parties, their future prospects, their ages and health, and the parties' conduct in causing the divorce." Ingram v. Ingram, 602 So.2d 418, 421
(Ala.Civ.App. 1992).
In this case, at the time of trial, the wife was 27 years old; the husband was 33 years old; the parties had been married for four and a half years; and neither party reported significant physical problems. The wife testified that at the time of the trial she was living in a bedroom of her friends' home and she needed $375 per month for rent and for utility service, although one of the owners of the home testified that the wife had not been charged rent for two months before the trial. However, there is no evidence indicating that the friends will continue to forbear collection of rent, nor is there any evidence indicating that the wife has any assets, other than a bank account containing approximately $9,000, that she can use to pay living expenses other than rent.
With respect to ability to pay alimony, we note that the husband's educational background and prospects for continued employment in Alabama appear to be excellent; there is no indication that he will be required to leave his current symphonic and musical-instruction jobs in the near future. In contrast, although the wife has work experience in Israel as a costume designer, a theatrical-history teacher, a translator, and a secretary, she is currently barred by law from accepting employment in the United States without INS approval. Moreover, the trial court expressly conditioned the wife's right to continued alimony upon her remaining in the United States, where, without INS approval, she cannot work to supplement her income beyond the $100 per month alimony award.
As a general matter, we will not reverse a decision concerning an award of alimony absent an abuse of discretion on the part of the trial court.O'Neal, 678 So.2d at 164. However, upon review of the evidence pertinent to the substantive factors set forth in O'Neal, supra, governing the trial court's discretion with regard to alimony and the wife's financial circumstances as of the time of trial, we must conclude that the trial court's award of $100 per month was clearly insufficient, especially considering the parties' standard of living during their marriage and the obstacles to the wife's obtaining employment while she remains in the United States. We therefore reverse that portion of the trial court's judgment and instruct that court, on remand, to set a monthly alimony award consistent with O'Neal and its progeny. Moreover, our reversal of the alimony award also encompasses the conditional termination provisions of that award; however, upon the occurrence of one or more of the conditions outlined by the trial court in its original judgment, that court will of course have the discretion to consider whether to modify the husband's alimony obligation at that future time. Cf. Hovater, 577 So.2d at 463.
The final issue raised by the wife concerns the trial court's direction that the parties be responsible for their own respective attorney fees. "The award of an attorney fee in a divorce case is within the sound discretion of the trial court and will not be reversed except for an abuse of discretion." Brasfield v. Brasfield, 679 So.2d 1091, 1095
(Ala.Civ.App. 1996); accord, Ex parte James, 764 So.2d 557, 559 (Ala. 1999) (plurality opinion noting that "[a]warding an attorney fee in a divorce case is a highly discretionary function of the trial court"). "Factors to be considered *Page 347 
by the trial court in a divorce action in making an attorney fee award include the earning capacity of the parties, the results of the litigation, and the financial circumstances of the parties." Brasfield, 679 So.2d at 1095.
In this case, the trial court properly denied an attorney-fee award to the wife. As we have noted, the trial court's judgment awarded neither party sole custody of the parties' child, despite the parties' requests in their pleadings for sole custody; moreover, neither party was expressly found to be at fault with respect to the breakdown of the marriage, and neither party received an appreciably larger share of marital assets. Although the wife does not currently earn income, she has shown the ability to pay approximately $16,000 to her attorneys without assistance from the husband, and there is evidence indicating that she has work experience and skills that would enable her to earn a living if she returns to Israel or if she obtains employment authorization from the INS. For his part, the husband earns just under $3,000 in gross income each month, from which he must pay $723 in alimony and child support and approximately $1,700 in living and business expenses; there is also evidence that he owes members of his family over $30,000 advanced to him to cover his legal expenses. Based upon those facts, we cannot conclude that the trial court abused its discretion in directing that the parties would be responsible for their own respective attorney fees.
For the reasons stated herein, the trial court's judgment is affirmed except as it concerns the automatic reversionary clause of the custody provision of the divorce judgment and the award of periodic alimony. As to those issues, the judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.
OPINION OF NOVEMBER 15, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
[1] The trial court also specified a conditional visitation schedule for the wife should the wife leave the United States to reside elsewhere and thus trigger the provision for an immediate change of custody.