This is a custody-modification case. Jennifer Jean Webber ("the mother") and Kenneth Paul Webber ("the father") divorced in 1999. The final judgment incorporated an agreement of the parties, which awarded custody of the parties' two minor children — a boy and a girl, ages two and three, respectively, at the time of divorce — to the mother, with liberal visitation to the father.
On July 27, 2000, the father petitioned for a modification of custody, alleging that a material change in circumstances had occurred because, he said, the children were suffering emotional and physical injury *Page 135 
in the custody of the mother. The father also moved for an emergency order granting him temporary custody of the children. The court set the petition and the motion for a hearing in September. However, on August 10, 2000, the father petitioned for a protection-from-abuse order, sought an ex parte order granting him temporary custody of the children, and moved to consolidate all of his pleadings. On October 10, 2000, the father moved for a default judgment against the mother, alleging that almost 60 days had passed without a response from her. On October 13, 2000, the mother answered the father's petition. Following an October 25, 2000, hearing, the court ordered the Department of Human Resources ("DHR") to perform a home study on the parties; however, the order was not filed until May 15, 2001. On July 12, 2001, the father moved for an emergency transfer of custody, alleging that the mother was neglecting the children. The court entered an order dated July 12, 2001, that awarded temporary custody of the children to the father. The mother moved to set aside the July 12, 2001, custody order. The court appointed a guardian ad litem to represent the children, and it set the matter for trial.
Following an ore tenus hearing in October 2001, the court entered an order, that stated, in part,
 "that the [father] shall have care, custody and control of the minor children . . . who shall reside with [the father], provided, that the [mother] shall have the right to visit with said minor children on alternate weekends. . . . This visitation order is contingent upon the [mother] maintaining her residence within a 25-mile radius of Moody, Alabama. In the event that she should move her residence beyond the 25-mile radius her visitation with the minor children shall be suspended pending further order of this court."
The mother moved to alter, amend, or vacate the judgment, or, in the alternative, for a new trial. The court set the mother's postjudgment motion for a hearing and later denied the motion. The mother appealed.
The mother argues that the trial court abused its discretion in changing custody so as to award custody to the father. "The ore tenus rule is applicable to child-custody-modification proceedings, and the court's judgment based on its findings of fact will not be reversed absent a showing that the findings are plainly and palpably wrong."E.M.C. v. K.C.Y., 735 So.2d 1225, 1228 (Ala.Civ.App. 1999). This court has stated:
 "When a noncustodial parent seeks to modify the custody provision of a prior judgment, the evidentiary standards set forth in Ex parte McLendon, 455 So.2d 863
(Ala. 1984), must be applied. The petitioning parent must show that a change in custody will materially promote the child's best interests and welfare. Id.
That parent must also show that the good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Butts v. Startley, 600 So.2d 310 (Ala.Civ.App. 1992)."
Etheridge v. Etheridge, 712 So.2d 1089, 1091 (Ala.Civ.App. 1997).
The father testified at the October 2001 hearing that he had been employed at Authentic Cabinets for about five years, earning approximately $35,000 per year, and that he provides health insurance for both children. He further stated that he lived in a three-bedroom, two-bathroom apartment. He stated that the children had been living with him most of the time since December 2000, when the mother told him that she was not able to keep the *Page 136 
children because she had to work. He testified that the children had been living with him full-time since July 2001.
The father testified that the daughter suffers from a serious medical condition known as kidney reflux, which requires her to take medication every day to help prevent kidney failure and a subsequent transplant or surgery. He further stated that the daughter frequently suffers from severe urinary tract infections, and that she sees a kidney specialist at Children's Hospital in Birmingham. He testified that when the mother had custody of the children, she seldom sent the daughter's medication when the daughter visited with him. He went on to state that the daughter suffered kidney damage in 1999 as a result of the mother's failure to give the daughter her medication as prescribed.
The father testified that the mother had provided a very unstable living environment for the children. He stated that one of the reasons he wanted to obtain custody was because when he picked the children up for his summer 2000 visitation they were hungry, dirty, unkempt, and mentally underdeveloped. He further testified that the mother changed residences frequently and that she had allowed several of her friends to stay in her home while she had custody of the children.
The father testified that since the children have been in his custody they were doing very well; that they were enrolled in school; and that they were on a daily routine. The father presented several witnesses, including the paternal grandmother, two of his neighbors, and the children's teachers, who testified that he was a good and loving father and that the children had greatly improved since they had been in his custody.
The mother testified that she had been living in Birmingham with the maternal grandmother for a few months, working as a server at Logan's restaurant. According to the record, the mother had previously been employed as a server at a restaurant and bar in Chattanooga, Tennessee, often working until 3:00 a.m. Although she reported to DHR that she earned about $2,400 per month, and that after paying her monthly expenses she had $1,000 left each month, the mother testified that she had suffered financially and had "[run] into hard times." She further testified that "I didn't get to spend as much time with [the children] as I wanted to, but it was always because I was working and trying to make ends meet. . . ." She testified that she wanted to move back to Chattanooga and get her old job back. However, she further testified that if she was given custody of the children she would quit working nights and move into a three-bedroom mobile home in Trussville, Alabama. The mother denied that she had neglected the children in any way.
It appears that the mother has exhibited questionable judgment on more than one occasion regarding the health and welfare of the children. We cannot say that the court abused its discretion in changing custody from the mother to the father. Therefore, we affirm that portion of the judgment.
The mother further argues that the trial court abused its discretion in ordering that her visitation rights be suspended in the event that she fails to maintain her residence "within a 25-mile radius of Moody, Alabama." It is well-settled law in Alabama that the determination of visitation rights for the noncustodial parent is a matter resting within the sound discretion of the trial court and that its judgment on that matter will not be reversed on appeal except for an abuse of that discretion. Ladewig v. Moxley, 589 So.2d 738 (Ala.Civ.App. 1991). That broad *Page 137 
discretion is based upon the trial court's having the benefit of hearing evidence presented ore tenus and the opportunity to personally observe the litigants and witnesses. Andrews v. Andrews, 520 So.2d 512
(Ala.Civ.App. 1987). In exercising its discretion in awarding visitation rights, the trial court's primary consideration must be the best interests and welfare of the child, and each case must be decided on its own facts and the personalities involved. Durham v. Heck, 479 So.2d 1292
(Ala.Civ.App. 1985). This court has upheld a residential restriction when the best interests of the child would be served. See Everett v. Everett,660 So.2d 599, 602 (Ala.Civ.App. 1995) (trial court did not abuse its discretion in restricting the custodial parent from changing her residency without the prior consent of the father or the prior approval of the court because of evidence of serious problems the older son had had and his need for care and treatment). However, concerning an automatic modification of a visitation award, we have held:
 "Although we have not previously addressed this precise issue, we have held similar automatic modifications within the contexts of child support and custody to be in error. In Hovater v. Hovater, 577 So.2d 461 (Ala.Civ.App. 1990), this court struck down a custody reversionary clause that modified custody from one parent to the other in the event of a parent's move from a geographical area. We found the clause to be of no effect because `it is premised on a mere speculation of what the best interest of the children may be at a future date.' Id., at 463. In Morrison v. Kirkland, 567 So.2d 363 (Ala.Civ.App. 1990), the trial court had entered an order providing for the automatic escalation of child support payments. We reversed that provision, finding that `there is no evidentiary basis for the determination of future events and . . . there exists an adequate procedure for modification when changes in circumstances do occur.' Id., at 364."
Hall v. Hall, 717 So.2d 416, 417 (Ala.Civ.App. 1998).
We conclude that the trial court was justified in placing a residential restriction upon the mother's visitation rights, based upon the overwhelming evidence of her haphazard lifestyle, her apparent inability at this point to adequately care for the children, and the daughter's medical condition. However, we further conclude that the trial court's automatic suspension of the mother's visitation rights should she move beyond the area designated in the trial court's order is based upon conjecture as to what the best interests of the children might be in the future. Hall at 417. We note that the trial court could have included a provision in its order requiring the mother to give prior written notification to the father of her intent to move from the restricted area or that the court could have ordered that the mother's visitation be supervised. Therefore, that portion of the court's judgment regarding an automatic suspension of the mother's right to visitation is reversed, and the case is remanded for the trial court to enter a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Crawley, Thompson, Pittman, and Murdock, JJ., concur. *Page 138