BRYAN, Judge,
concurring specially.
I concur with the main opinion to reverse the circuit court’s judgment and to remand the cause.
I agree that the circuit court’s judgment is a final judgment and that the circuit *676 court applied the correct standard announced in Ex parte McLendon, 455 So.2d 863 (Ala.1984), i.e., the McLendon standard. I further agree that, in view of the overwhelming evidence of the mother’s lack of parental skills and good judgment, the circuit court’s judgment determining that the father failed to satisfy his burden under the McLendon standard is plainly and palpably wrong.
The circuit court’s judgment states:
“The Court is satisfied from the evidence that the [mother] since the parties’ divorce has exercised poor judgment in her choice of male companions, at least one of whom has been convicted of causing physical injury to one of her children; in continuing to use marijuana after the physical custody of [A.H.] and two other children were removed from her by DHR; by failing to comply fully with the recommendations of DHR’s staff about her long-term use of narcotic drugs, [A.H.]’s need for counseling and parental supervision issues; and by leaving adult decisions to be made by four or five year old children. Yet, despite the [mother]’s shortcomings, it appears that [A.H.] is closely bonded with her mother.
[[Image here]]
“While there has been little change in the [fatherj’s circumstances since the divorce, the evidence shows problems with the [mother’s lifestyle, her health and her commitment to the best interests of her children. ”
(Emphasis added.)
Since the parties’ divorce, the mother exposed A.H. to a dangerous environment by her involvement with an abusive boyfriend, who was convicted of physically abusing one A.H.’s half siblings; continued to use marijuana, as evidenced by three failed drug tests; and failed to fully comply with DHR’s requests to obtain counseling for herself and A.H. Yet, it is quite evident from the judgment that the circuit court placed a greater importance on the evidence of the bond between A.H. and the mother than on the substantially undisputed evidence establishing that the mother had engaged in a lifestyle that was to the detriment of AH.
The circuit court’s judgment further states:
“If the [father] would remain in or near Decatur, then the decision to grant him ... physical custody of [AH.] would be relatively easy. But that is not possible because of his military service commitment. If granted custody, he would take [A.H.] to the Marine Corps base at Kaneohe Bay, Hawaii, where they have no relatives and will live in military housing that consists of two or three rooms. He plans to hire a live-in nanny to care for [A.H.] When his military duties require him to be away from home, a person who is not related and whose background is unknown to the Court will become the child’s full time caregiver. Should his re-deployment to a foreign country become a necessity despite his status as a single parent with custody, [A.H.] either would remain in Hawaii with non-relatives or [would] have to be shipped back to Alabama. For financial reasons, it would be next to impossible for the [mother] to travel to Hawaii to maintain the important bond between a mother and a daughter.”
(Emphasis added.) Furthermore, the circuit court’s amended judgment states:
“The Court remains impressed with the sincere concern about his daughter that [the father] has demonstrated since May, 2005, as well as with his efforts to rekindle a relationship with [AH.] That the Marines have instilled in [the fa- *677 therj a structured and disciplined lifestyle is mthout question. That his character may be superior to that of [the mother] is probably not debatable. But this case is not about whether [the mother] or [the father] is the better person. It is about the material benefits being weighed against the detrimental impact of uprooting a child from all that she has known during her life and relocating her thousands of miles away with a parent who has no proven record under realistic circumstances of taking care of an 8-year-old daughter.”
As the circuit court’s judgment states, the father demonstrated that he has exercised good judgment and that he has made efforts toward promoting A.H.’s welfare. In fact, the father testified that he visits A.H. every time he has an opportunity to do so. The evidence established that the father fully cooperated with DHR regarding its request that A.H. attend counseling. The father has maintained consistent contact with DHR, even during the time when he was overseas. The evidence established that the father has established a bond with A.H. and that A.H. has expressed no apprehension regarding the possible move to Hawaii. Even more, A.H.’s counselor testified that A.H. had progressed since the time A.H. was placed in the father’s care.
Despite the evidence regarding the father’s efforts and good judgment relating to the care of A.H. and the evidence regarding the mother’s lack thereof, the circuit court denied the father’s petition for modification of custody on the basis of his military status and some possible future occurrence, i.e., the father’s possible redeployment. This determination is plainly and palpably wrong. Trial courts must consider evidence relevant only to the period since the most recent custody determination in determining whether to modify custody pursuant to the McLendon standard. C.P. v. W.M., 837 So.2d 860, 863 (Ala.Civ.App.2002). Furthermore, in reversing judgments that provided an automatic change of custody, visitation, or child support upon the occurrence of a future event, we have stated: “[T]here is no evi-dentiary basis for the determination of future events and ... there exists an adequate procedure for modification when changes in circumstances do occur.” Morrison v. Kirkland, 567 So.2d 363, 364 (Ala.Civ.App.1990). See also Webber v. Webber, 854 So.2d 133 (Ala.Civ.App.2003); and Korn v. Korn, 867 So.2d 338 (Ala.Civ.App.2003). In the present case, the circuit court made a determination regarding custody based on the possibility that the father would be redeployed overseas. That determination is erroneously based upon speculation.
Even though the circuit court commends the father for his actions in caring for A.H., the circuit court concludes that it “cannot say with any reasonable degree of certainty that sending [A.H.] to Hawaii ... would be materially more beneficial than keeping her close to family, friends, school and the parent who had been her primary caregiver until about five months ago,” even in view of its finding that the mother has “problems with [her] ... commitment to the best interests of her children.” Undoubtedly, AH.’s best interests would be materially promoted by removing her from the custody of the mother, who has a dependency petition regarding AH.’s half sibling pending against her and who has had two other children removed from her custody by DHR. Furthermore, the benefits of removing A.H. from the custody of a mother who (1) makes poor choices by engaging in relationships with men who have physically abused her children; (2) continues to abuse controlled substances and fails to even acknowledge her problem, let alone obtain treatment for her depen *678 dency; and (3) fails to comply with DHR’s requests regarding efforts to rehabilitate herself would certainly more than offset the disruptive effects of moving A.H. to Hawaii with the father, who is able to provide A.H. with a safe and healthy environment.
It is evident that if the father were not enlisted in the military, the circuit court would have awarded him physical custody of A.H. In considering the foregoing and in view of events involving the mother that have taken place since the parties’ divorce, I concur in the majority opinion holding that the circuit court’s judgment denying the father’s petition to modify physical custody is plainly and palpably wrong.