MOORE, Judge.
Anastasia R. Bird (“the mother”) appeals from two judgments entered by the Bibb Circuit Court (“the trial court”) in separate actions filed by the mother and Richard R, Bandy (“the father”) to modify their divorce judgment. We affirm the judgments in part and reverse them in part.

Factual Background and Procedural History

The parties were married in 2002, and their marriage produced two children, A.B., who was born on October 14, 2004, and I.B., who was born on May 15, 2008. During the marriage, the parties resided with the children in Woodstock, which is located in north Bibb County. By 2009; both parents were working for the same employer in Calera, which is located in Shelby County and is approximately a 45-to 50-minute drive from the marital residence in Woodstock. During the marriage, the father’s parents provided day care for the children when the parties worked.
The parties were divorced by a judgment entered by the trial court on February 10, 2010; that judgment incorporated a settlement agreement between' the parties, which provided, among other things, that the parties would exercise joint legal and physical custody of- the children, that the father would have final decision-making authority over day-care and academic matters, and that the children would spend as close to equal time with each parent as possible. The settlement agreement further expressed the parties’ intent that they would both remain living in the north Bibb County area in order to assure that the children, would be educated in nearby public schools and that, the father’s parents would continue to provide day care. The settlement agreement further addressed the possibility of the mother’s relocating as follows:
-“[S]hould [the mother] move to such a distance that she can not transport the *1167 children to day care or later school due to distance the children would be required to travel then, in that event, the parties agree the children .will, remain, during the school week, in the home with the [father] until both parties return to the general area, unless the parties agree differently, in writing, and the parties return to an attorney or attorneys of their choice to prepare the necessary documents to alter or amend the living arrangement of the minor children or until a Court .can hear the case.”
After the divorce, the mother moved less than 10 miles away from the marital residence to a residence located in Tuscaloosa County. As was agreed between the parties, A.B. first attended a kindergarten and then an elementary school in Bibb County and I.B. eventually attended a kindergarten in Bibb County. Because of the proximity of the mother’s new residence, which allowed the mother to transport the children to day care and school, the parties kept the children approximately an equal amount of time as they had intended. When the father exercised physical custody of the children, he depended on his mother, his sister, and his then fiancée to care for the children in the mornings, to transport the children to and from school, and to provide the children with after-school care until he arrived home from work, usually between 5:30 and 6:00 p.m.
On November 29, 2012, the mother filed a petition requesting, among other things, that the trial court modify the divorce - judgment to award her sole legal and physical custody of the children and to require the father to pay her child support; that petition was docketed as case no. DR-10-900001.01 (“the .01 action”). The mother alleged that the. father had basically delegated his child-care responsibilities to his mother, his sister, and his then fiancée and that decisions would soon have to be made regarding the appropriate school 'for each child to attend as they aged out of their respective educational institutions. On January 7, 2013, the father filed a petition,- .requesting, among other things, that the trial court modify the divorce judgment to award him sole legal and physical custody of the children; the father’s petition was docketed as case no. DR-10-900001.02 (“the .02 action”). In his petition, the father alleged that the mother intended to remarry and move to Georgia. On April 12, 2013, the trial court granted the mother’s motion requesting that the .01 action and the .02 action be consolidated “so that all issues may be heard at the same time.”
The consolidated actions were tried on July 10 and August 21, 2014. During the trial, both parties agreed that the1 children were doing well in the joint-custody arrangement and that the parties and their new spouses worked together to benefit the children.. The mother clarified that she had filed her modification petition because she; was proposing to relocate to Shelby County and that, ifithe relocation was permitted, she wanted to enroll the .children in school in Shelby County. The mother explained that she had remarried in April 2013, . that she had recently listed her Tuscaloosa County home for sale, that she and her new husband were looking for a new home- in various areas in Shelby County, that were closer to her workplacé in Calera, and that she was interested in enrolling the.children in the school system in the area where she would eventually be moving. At the time of the trial, the mother had not sold her home in Tuscaloosa County, she had not purchased a new home, and she had not identified a new school system for the children. The father testified that he had filed his modification petition so that he could gain sole legal and physical custody of the children in the event the mother moved to Shelby County, *1168 The father testified that he' believed it would be in the best interests of the children to remain in Woodstock in the parties’ former marital residence, which, he said, is surrounded by the . dwellings of his immediate.family, and to continue in the school system in which they were currently, enrolled and in which it was undisputed that the children had excelled, but that he would also consider moving to Shelby County to maintain the parties’ joint-custody arrangement; if necessary. The trial court permitted- the pleadings to be amended to conform to the evidence and new theories presented by the parties. See Rule 15(b), Ala. R. Civ. P.
The trial court entered separate, but identical, judgments in the .01 action and the .02 action on September 8, 2014. Those judgments provide, in ■ pertinent part:
“[The father] pled requesting that, should [the mother] move outside the general ‘area’ of Bibb County, the Court modify the final judgment to allow him to provide the primary living arrangements for the children during the school term. Based upon [the mother’s] notice to the Court that she and her husband would be moving to some area of Shelby County by or before the end of th[e 2014-2015] school year, this Court awards the primary living arrangements of the children during school terms to [the father]. The parties may choose to keep the same physical custodial time with the children until [the mother] moves.”
The judgments further set out a specific schedule in the event the parties could not agree on visitation. The judgments also awarded the father child support and ordered the mother to pay one-half of certain expenses incurred on behalf of the children. Finally, the trial court ordered the mother to pay $7,500 toward the father’s attorney’s fees.
The mother filed a motion to alter, amend, or vacate the judgments on September 28, 2014. After a hearing on the postjudgment motion, the trial court entered separate amended judgments on December 16, 2014, that provide, in pertinent part:
“1. The Change in Custody provision of the 9-8-14 [judgments] will only apply if [the mother] actually moves from the local area and such move does not allow for the current custody and school arrangements to stay in place.' Should [the mother] move from the current local' area, the change in custody that is ordered is found to be in the best interest of the children due to the evidence received on their progress and maturation in the record....
“2. The other provisions of the 9-8-14' [judgments] will remain in effect.”[1]
On January 16, 2015, the mother filed a notice of appeal from the judgment entered in the .01 action; that appeal was docketed as case no. 2140336. That same day, the mother filed a separate notice of appeal from .the judgment entered in the .02 action; that appeal was docketed as case no. 2140337. This court consolidated the appeals ex mero motu.

Analysis

To the extent that the mother argues that the trial court erred by failing to award her sole legal and physical custody of the children and by failing to allow her to change their schools, we disagree.
“Where, as' in the present case, there is a prior judgment awarding joint physical custody, ‘ “the best interests of the *1169 child”’ standard applies in any subsequent custody-modification proceeding. Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala.1988)). To justify a modification of a preexisting judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ‘ “it [is] in the [child’s] best interests that the [judgment] be modified” ’ in the manner requested. Nave v. Nave, 942 So.2d 372, 376 (Ala.Civ.App.2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987)).”
Ex parte Blackstock, 47 So.3d 801, 804-05 (Ala.2009). Likewise, a legal-custody award, including the designated right to decide educational matters for a child, máy be modified only upon a showing that there has been material change of circumstances since the date of the award and that modification would be in the best interests of the child. See Gallant v. Gallant, 184 So.3d 387, 404 (Ala.Civ.App.2014). Based on the evidence indicating that the children were thriving in the joint-legal- and joint-physical-custody and educational arrangements that were in place at the time of the trial, the trial court was within its discretion to determine that it was in the children’s best interests to continue those arrangements.
We do agree, however, that the trial court committed reversible error by ordering a change of the joint-physical-custody arrangement in the event that the mother moved from her residence in Tuscaloosa County if “such move does not allow for the current custody and school arrangements to stay in place.” In Hovater v. Hovater, 577 So.2d 461 (Ala.Civ.App.1990), the Lawrence Circuit Court entered a divorce judgment requiring each party to reside in the Mt. Hope school district so that their children could attend school there. If either party failed to send their children to a school in the Mt. Hope school district or if either party moved outside that school district, the judgment provided that custody would, automatically vest in the other party during the school year. 577 So.2d at 462. This court held that the trial court had erred in relying on what we described as a “custodial reversionary clause,” which, we held, is “of no effect because it is premised on a mere speculation of what the best interests of the children may be at a future date.” 577 So.2d at 463. Based on Hovater, this court subsequently held that a trial court -had abused its discretion by ordering an automatic change in custody based on the future relocation of a parent. See Korn v. Korn, 867 So.2d 338 (Ala.Civ.App.2003).
In the present case, the trial court heard evidence supporting its determination that the mother intended to move to some area in Shelby County, but the trial court did not receive any evidence indicating exactly where the mother intended to relocate and, consequently, did not receive any evidence indicating whether that particular relocation would actually impact the parties’ joint-physieal-custody arrangement. In essence, the trial court determined that a change in the joint-physieal-custody arrangement would be premised on two future events: (1) the mother’s actual relocation, which condition might not occur, and (2) the inability of the parties to continue their joint-physical-custody arrangement as a result of that relocation, á condition being particularly subject to differing opinion. The parties have not directed this court to any reported decisions in which either this court or our supreme court has held that a trial court may enter a binding judgment prospectively modifying custody *1170 under such speculative circumstances.[2] Therefore, we reverse 'the' judgments of the trial court insofar as they contain automatic custodial reversionary clauses, and we remand the causes with instructions to the trial court to vacate those clauses.
It appears that the trial court premised its awards of child support, of one-half of certain of the children’s expense’s, and of attorney’s fees at least" partially on its determination that the father should receive sole physical custody of the children in the event the mother relocated to Shelby County. Because we are reversing that áspect of the trial court’s judgments for the reasons stated above, we instruct the trial court to also reconsider those awards on remand.
2140336 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
2140337 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P J., and PITTMAN, THOMAS, and DONALDSON, JJ„ concur.

. ' The trial court amended the amount of child support awarded to the father in an amended judgment entered in the .02 action on September 11, 2014.

. We note that this case is not governed by the Alabama Parent-Child Relationship Protection Act, § 30-3-160 et seq., Ala.Code 1975, which applies only when a person with a right to establish the principal residence of a child proposes to move the principal residence of the child out of state or more than 60 miles within the state from his or her present location. See §§ 30—3—162(b) & 30-3-163, Ala.Code 1975. The divorce judgment in the present case provides that the children do not have a principal residence. Furthermore, nothing in the record shows that the mother had the right to establish the principal residence of the children, and, even if she did, the record contains no evidence indicating that the mother intended to relocate out of state or more than 60 miles from her present location.