GEORGIA WILLIAMS *vs.* JOHN H. STEVENS PITNEY.

Plymouth. January 9, 1991. - March 5, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Divorce and Separation,* Custody of child, Separation agreement, Modification of judgment. *Contract,* Separation agreement.

In a proceeding in which a custodial parent sought authority to remove her minor children from the Commonwealth pursuant to G. L. c. 208, § 30, and in which the divorced parents had signed a separation agreement, incorporated into the judgment and surviving as an enforceable contract, providing that neither party would remove the children without the consent of the other, the standard to be used to determine whether to modify the judgment was that set forth in G. L. c. 208, § 30, as interpreted in *Yannas* v. *Frondistou-Yannas,* 395 Mass. 704 (1985), rather than the standard applied to modifications of surviving separation agreements. [454-455]

In a proceeding under G. L. c. 208, § 30, the probate judge properly applied the correct standard in granting authority to a custodial parent to relocate herself and her minor children to California. [455-456]

In a proceeding under G. L. c. 208, § 30, no reversible error appeared in the admission of certain hearsay evidence with respect to the custodial parent's prospective out-of-State employment [456]; nor in the judge's eliciting testimony from her during a hearing [456-457].

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on June 11, 1985.

A complaint for modification, filed on February 22, 1988, was heard by *Robert M. Ford,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John J. Perenyi* for the defendant.

*Ira L. Lipman* for the plaintiff.

NOLAN, J. This appeal arises from a Probate Court decision granting authority to the plaintiff (mother) to relocate herself and the two minor children of the parties' marriage to

California under G. L. c. 208, § 30 (1988 ed.).[1] The parties had signed a separation agreement which provided that neither party would remove the children from the Commonwealth without the consent of the other. The agreement was incorporated into the divorce judgment and survived it. We transferred the defendant's (father's) appeal to this court on our own motion. We are asked for the first time to determine what burden of proof a party must meet before being granted the authority to remove children from the Commonwealth when there is a provision in the surviving separation agreement regarding removal. We must determine whether the standard should be that applied to parties seeking removal under G. L. c. 208, § 30, who have no agreement, namely, the "real advantage" standard, or that applied to modifications of surviving separation agreements, the "something more than a material change in circumstances" standard.

The mother and father were married on December 27, 1975. There were two children born of the marriage, one in May of 1977, and another in June of 1979. The parties were divorced by judgment nisi in October of 1986. They share joint custody of the children, the mother having physical custody. The parties signed a separation agreement which was incorporated in and survived the divorce judgment. The agreement stipulated that "neither party shall remove [their] minor children from the Commonwealth . . . without the other [party's] . . . consent."

On February 22, 1988, the mother filed a complaint for modification of the judgment nisi, seeking permission to relocate with the children to California. The father answered and counterclaimed seeking sole custody of the children. In

---

[1]General Laws c. 208, § 30, provides in relevant part: "A minor child of divorced parents who is a native of or has resided five years within this commonwealth and over whose custody and maintenance a probate court has jurisdiction shall not, if of suitable age to signify his consent, be removed out of this commonwealth without such consent, or, if under that age, without the consent of both parents, unless the court upon cause shown otherwise orders."

granting the authority to the mother to relocate with the children, the judge made the following findings of fact.

The mother had attended Mills College in New York and the University of Massachusetts for two years, pursuing degrees in early childhood education and sociology. The mother worked as a social worker in 1973. Thereafter, she held various positions until 1978, including sales, secretarial, waitress, and factory work. The judge found that, from 1978 until 1986, the mother was unemployed due to her child rearing responsibilities. In 1986, she worked as an office manager for $5 per hour and also as a security guard for $7 per hour. She attended an eighteen-month computer programming course, which she completed in June of 1986. She earned a certificate in programming and is qualified for entry level work in that field. The judge determined that the mother had made many contacts with employment agencies, visited several prospective employers, but was unsuccessful in finding employment.

In March of 1988, the mother sold her house in Kingston, because she could not maintain the mortgage payments. She moved to Wilbraham, where housing was more affordable. In addition, Wilbraham offered an excellent school system and educational facilities for the younger son who suffers from a 60% receptive hearing loss and requires special classroom attention.

After the move to Wilbraham, the mother performed clerical work for eight hours per week. In the spring of 1988, she attempted to operate her own advertising agency, but to no avail. In September, 1988, the mother attended a "job fair" seeking a position as a computer programmer, but again with no success. She has been unemployed since December 1, 1988. The judge found that the mother has been unable to procure meaningful employment in a financially adequate position in Massachusetts, and that she continues to borrow money to help defray living expenses.

The father, an insurance agent as well as self-employed in the solar energy field, has remarried. He and his wife, an elementary school art teacher, have a child. The father has

two minor stepchildren, from his present wife's former marriage. He lives in an eleven room, five bedroom house on two acres of land. In 1987, the father visited the children for two hours per week. He coached their youth hockey team and was their Cub Scout leader. Prior to the move to Wilbraham, the father saw the children's school guidance counselor once a month. The children now spend every other weekend and six weeks of the summer vacation period with their father. The judge concluded that the father loves the children and has taken an active interest in them, particularly since his remarriage. The father's present wife loves the children and engages in many activities with them such as skating, boating, sledding, and swimming.

In February of 1987, the mother traveled to Santa Barbara, California. During her visit she investigated the school system and employment possibilities. In January of 1988, she again investigated the school system and found it to be more than adequate.

The mother's parents are deceased and she has one sister living in New Jersey. The mother has several relatives and close friends residing in the Santa Barbara area. Her cousin is employed by the University of California as a computer programmer. It is with this cousin that the mother plans to reside if allowed to move to California. The mother's nineteen year old daughter from a prior marriage lives with this same cousin. The judge found that the mother suffers from asthma and that she feels that the warmer climate would improve her condition. In addition, the mother speaks Spanish and is excited about moving to a bilingual community.

The judge modified the judgment nisi and granted the mother the authority to relocate the children to California. The father contends that the judge applied the wrong standard in determining whether to allow modification. He alleges that the wife was required to show "something more than a material change in circumstances" to justify changing a provision that appears in a surviving separation agreement. See *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231,

236 & n.7 (1987). The judge, on the other hand, applied the "real advantage" standard, which is used to determine whether a child can be removed from the Commonwealth under G. L. c. 208, § 30. We determine that the statute is controlling on this matter. Therefore, the judge applied the proper standard. Accordingly, we affirm.

Section 30 provides that a "minor child of divorced parents . . . over whose custody and maintenance a probate court has jurisdiction shall not . . . be removed out of this commonwealth . . . without the consent of both parents, unless the court upon cause shown otherwise orders." The words "upon cause shown" mean that the move must be in the "best interests" of the child. *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 711 (1985).

In *Yannas*, the judge granted the mother's request to remove the couple's minor children to Greece for permanent residence. There was no separation agreement between the parties. We stated in *Yannas, supra* at 711-712, that a judge must consider several factors collectively to evaluate whether the best interests of a child would be served by allowing removal under G. L. c. 208, § 30. These factors included whether the child's quality of life would be improved by the move, possible adverse effects on the child from decreased contact with the noncustodial parent, the interests of the custodial parent, and the absence of a motive to deprive the noncustodial parent of contact. *Id.* at 711. Finally, the judge should consider the interests of the noncustodial parent as well. *Id.*

The first consideration in the process of determining the best interests of a child is whether there is a "real advantage" to the move. *Yannas, supra* at 711. It is this "real advantage" standard that the judge below applied in granting the mother authority to relocate the children to California. The mother argues that the *Yannas,* "real advantage," standard was properly applied even though the parties had a surviving separation agreement. She contends that the statutory language of "unless the court upon cause shown otherwise

orders" overrides the provision in their separation agreement that consent is needed for removal.

The father, however, contends that, since the separation agreement survived as an enforceable contract, the burden of proof on the party seeking a modification should be considerably greater, citing *Stansel* v. *Stansel*, 385 Mass. 510, 514-515 (1982). The father distinguishes *Yannas, supra* by pointing out that the parties in that case had no separation agreement. He argues that the judge should have required the mother to show "something more than a material change of circumstances," or the so-called "countervailing equities" standard, in order to modify the provision of the agreement. See *Stansel, supra* at 515 (where parties have entered into separation agreement that was fair, reasonable, not the product of fraud or coercion, and survives the judgment, more than a material change of circumstances must be shown before the judge refuses to enforce it). *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 235-236 (1987), and cases cited (to modify surviving separation agreement "something more than a material change of circumstances" characterized as "countervailing equities," such as one spouse becoming public charge, must be shown).

We are faced with an issue of apparent first impression. We must decide what standard the judge should apply to determine whether to grant a request for the removal of children from the Commonwealth: the c. 208, § 30, "real advantage" standard, the "countervailing equities" standard, or some other standard. The statute is controlling over the provision contracted by the parties. Therefore, the statutory standard is to be used, even in this case, where the parties have contracted for consent of the other before removal. The judge did not err in applying the statutory standard below. It is the statutory language, "unless . . . upon cause shown," as interpreted in *Yannas*, which is to be used in determining whether modification is warranted.

Although we still adhere to the policy that a surviving separation agreement, that was fair and reasonable at the time of the divorce judgment and free from fraud and coercion,

should be upheld to allow predictability and future planning, *Ames* v. *Perry*, 406 Mass. 236, 240-241 (1989), we do not adhere to this policy blindly. Where a separation agreement is incorporated in a divorce judgment and survives as an independent contract, it is not an absolute bar to subsequent modification of the judgment. *Ryan* v. *Ryan*, 371 Mass. 430, 432 (1976).

General Laws c. 208, § 30, and the standard of proof which it requires cannot be written off by the parties. The best interests of the child will control where there is a question as to whether the child will be removed from the Commonwealth. The jurisdiction of the Probate Court over the minor children of divorced parties may not be ousted by the terms of a separation agreement, and the court may, where the best interests of the child dictate, disregard the agreement. *Masters* v. *Craddock*, 4 Mass. App. Ct. 426, 429 (1976) (surviving separation agreement with provision for removal of children). Where the welfare of the child warrants, a Probate Court judge may disregard the terms. The standard to be used to determine whether to modify the judgment when dealing with the removal of the children is that set forth by the Legislature in G. L. c. 208, § 30, and interpreted by this court in *Yannas*.

Now that we have determined that the statutory standard is controlling, we look to how it was applied in the case before us. It is clear that the judge below properly applied the *Yannas*, "real advantage," standard. He specifically stated that he had carefully considered the factors enumerated in *Yannas* in reaching his decision.

The judge concluded that the mother had established "good and sincere reasons" for wanting to relocate with the children to California, and had no intent to deprive the father of contact. He determined that the financial stress on the mother and her unhappiness if not allowed to move would adversely affect the children. The judge concluded that relocation to California would result in a "real advantage" to the family unit, and that it would be in their "best interests" to allow them to do so. He considered the interests

of the custodial parent, the noncustodial parent, and the children in reaching his decision. The judge reasoned that the mother would be close to friends and relatives who would provide emotional support after the move, and that the mother would be better able to secure employment. He determined that "[a]ny possible adverse effect on the children caused by a decrease in time with their father, will be more than offset by the uplifting effect upon them of a mother who is happy and alive with enthusiasm and excitement." We find no error in the standard applied, and we do not disturb the judge's findings.

The father also contends that the judge committed reversible error by admitting hearsay evidence regarding the availability of employment in California at a salary of $18,500 per year. Even assuming, arguendo, that the husband is correct, there is no basis for reversing the decision. The judge did not make a finding on this specific point other than to say in the "rationale" section of his findings of fact and conclusions of law that "[t]here is substantial indication that the mother will be able to secure employment commensurate with her training and experience in the computer field which she has been unable to do in Massachusetts." The judge could have made this finding from the mother's testimony as to the results of her investigation of the job market in California. In addition, there was evidence on which the judge based the belief that the best interests of the children would be served by relocation. For instance, the judge reasoned that the support system of friends and relatives available to the mother in California, and the positive mental effect of the move on the mother, would benefit the children and be outweighed by any adverse effects from decreased time with the father. There was no error.

Likewise, there was no error in the judge briefly taking over the questioning of the mother. The father contends that the judge participated in the mother's case-in-chief by eliciting, over hearsay objections, that she had obtained a job offer at a salary of $18,500 per year. The judge did not rely on the elicited testimony in making his finding and, therefore, even

if one assumes, arguendo, that the judge erred, there is no basis to reverse.

*Judgment affirmed.*