2005 ND 53

**Suzanne Marie FRIEZE, now known as Suzanne Marie Roll, Plaintiff and Appellee**

v.

**Lyle Allan FRIEZE, Defendant and Appellant.**

No. 20040103.

Supreme Court of North Dakota.

March 4, 2005.

Arnold V. Fleck, Fleck Law Office, Bismarck, N.D., for plaintiff and appellee.

Suzanne M. Schweigert, Smith Bakke Oppegard Porsborg Wolf, Bismarck, N.D., for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Lyle Frieze appealed from an order and amended judgment granting Suzanne Roll's motion to change the residence of the parties' children from Wyoming to California and denying Frieze's motion for a change of custody. Following oral argument this case was temporarily remanded to the trial court under N.D.R.App.P. 35 for preparation of findings of fact. We now affirm, and remand for determination of Roll's request for attorney fees on appeal.

I

[¶ 2] Frieze and Roll were married in 1988 and have three children of their marriage. They were divorced in 2002. The divorce decree, entered upon the parties' stipulation, awarded Roll custody of the children with reasonable visitation for Frieze. Frieze continues to live in North Dakota, but Roll moved to Wyoming with the children prior to the divorce, and the original decree authorized her "to change the residence of the minor children to Casper, Wyoming." In May 2003, she married Todd Roll. Shortly after their marriage, he moved to California where he had secured employment. Suzanne Roll then filed a motion with the district court in North Dakota requesting permission to move with the children from Wyoming to California. In response, Frieze filed a motion requesting the court to change custody of the children to him. After a hearing, the district court granted Roll's motion to change residence and denied Frieze's request for a change of custody.

II

[¶ 3] On appeal, Frieze asserts the trial court's denial of his motion to change custody is clearly erroneous. When a motion to change custody is brought within two years following entry of the order establishing custody, N.D.C.C. § 14–09–06.6(5) limits the grounds upon which such motion can be granted:

5. The court may not modify a prior custody order within the two-year period following the date of entry of an order establishing custody unless the court finds the modification is necessary to serve the best interest of the child and:

a. The persistent and willful denial or interference with visitation;

b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

c. The primary physical care of the child has changed to the other parent for longer than six months.

The trial court's decision whether to modify custody is a finding of fact which will not be overturned unless it is clearly erroneous. *Hanson v. Hanson*, 2003 ND 20, ¶ 8, 656 N.W.2d 656. A finding of fact is

clearly erroneous if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law. *Id.*

[¶ 4] In support of his motion to change custody, Frieze claims Roll willfully and persistently denied or interfered with his visitation rights. He asserts she refused to allow some visits granted under the court order and she also would not allow him to speak to the children on the telephone. We have often stated that evidence of alienation or persistent frustration of visitation rights can be relevant in deciding whether there is a significant change in circumstances to warrant a change of custody. *See, e.g., Hendrickson v. Hendrickson,* 1999 ND 37, ¶ 13, 590 N.W.2d 220. Under Section 14–09–06.6(5), N.D.C.C., the legislature has expressly recognized that frustration of visitation may require a change of custody. The legislature considers persistent frustration of visitation and the emotional and physical endangerment of children to be in the same behavioral class and accords the same remedy of a change of custody. *Hendrickson v. Hendrickson,* 2000 ND 1, ¶ 18, 603 N.W.2d 896. Methods other than a change of custody should be used initially to attempt to remedy a parent's misbehavior, but, after exhausting other remedies, a change in custody may be the only method to correct the damage of a particularly stubborn and defiant custodial parent, and if alternative remedies fail the district court should consider a change in custody. *Id.* A custodial parent's egregious violation of court-ordered visitation is evidence of an intransigent attitude against visitation rights and such alienating behavior can weigh against a child's best interest. *Anderson v. Resler,* 2000 ND 183, ¶ 11, 618 N.W.2d 480.

[¶ 5] Regarding Frieze's claim that Roll interfered with his visitation, the district court made the following relevant findings:

[Frieze] has failed to show persistent and willful denial of interference with visitation by [Roll] ... as is required under NDCC, Section 14–09–06.6 in order for a custody decree to be modified within 2 years after its date of entry; and therefore no material or significant change of circumstances exist and [Frieze's] Motion To Change Custody is denied....

[Roll] has allowed [Frieze] all the visits he's entitled to under the judgment and more, despite [Frieze's] demanding nature and verbally abusive past. [Roll] understands the children love their father and believes it's important to the children they have a relationship with their father. She provided or arranged for half of the transportation for the vast majority of the visits that [Frieze] exercised in Mott, though she had no obligation to do so under the judgment....

In an attempt to establish a claim that [Roll] had been interfering with his right to speak to the children by telephone, [Frieze] maintained a log of his telephone calls, but often called only during times he had been informed in advance by [Roll] that the children would not be home or after he knew the children [were] in bed. When [Roll] proposed, in response to his complaints that he couldn't reach his children by telephone, that [Frieze] call at specified times each week, he refused to agree to such a schedule, stating he preferred to go back to court. He would bring witnesses along on the trips to Spearfish, South Dakota, where the parties usually met to exchange the children for each visit, and arrive more than an hour early for the exchanges when he was picking up the children and more than an hour

late when returning the children, but inform the witness that the time scheduled for the exchange was at the time they arrived, to make it look like [Roll] was constantly late bringing the children and he was on time when he returned the children.... He also made claims that he was denied visits to which he was entitled under the judgment, which claims were not supported by his own testimony.

[¶ 6] We conclude the trial court's findings on this issue are supported by the evidence and are not clearly erroneous. While these parties have exhibited animosity toward each other, it appears that Roll has attempted to accommodate Frieze's visitation rights under the divorce decree. Some of the frustrations Frieze has experienced in attempting to exercise visits or talk with the children on the telephone appear to be caused by his own actions in not scheduling his visitations and making telephone calls at times which are reasonable for the children and when the custodial parent can accommodate them.

[¶ 7] In support of the motion for change of custody, Frieze also asserts the children's present environment may endanger their physical or emotional health or impair their emotional development. Specifically, Frieze claims their son who has diabetes is not being cared for appropriately by Roll and his blood sugar levels are not being adequately controlled. He also claims the children's stepfather has been physically abusive to them. With regard to these allegations the trial court made the following relevant findings:

> [Frieze] ... has also failed to show that the childrens' present environment may endanger the childrens' physical or emotional health or impair the childrens' emotional development, as is required under NDCC, Section 14–09–06.6 in or-

der for a custody decree to be modified within 2 years after its date of entry. In March of 2003, on the seventh day of a nine day visit, he had the child with diabetes tested in Bismarck and, then, attempted to use the results of the test as means of proving [Roll] was not properly caring for the child without acknowledging the child had been under his care for the week prior to testing.

[¶ 8] In his appellate brief, Frieze concedes that the allegations of physical abuse by the children's stepfather, "comes down to weighing the credibility of [the stepfather's] word against the children's." A trial court's opportunity to observe the witnesses and determine credibility should be given great deference. *Hanson v. Hanson,* 2003 ND 20, ¶ 11, 656 N.W.2d 656. We conclude the evidence supports the trial court's finding that Frieze failed to demonstrate the children's present environment living with Roll as the custodial parent may endanger the children's physical health or emotional development.

[¶ 9] After reviewing the evidence in this case, we conclude the trial court's finding that Frieze failed to demonstrate the statutory prerequisites for a change of custody within two years of entry of the initial order establishing custody is not clearly erroneous.

### III

[¶ 10] On appeal, Frieze also asserts the trial court's decision to grant Roll's motion for a change of residence is clearly erroneous. The initial divorce decree specifically authorized Roll to reside with the children in Casper, Wyoming. Roll remarried and her husband shortly thereafter moved to California where he was able to find work in his field. Roll then filed a motion with the district court for permission to change residence of the children to California. If the noncustodial

parent has been given visitation rights by the divorce decree, the custodial parent may not change the residence of the child to another state except upon order of the court or with consent of the noncustodial parent. N.D.C.C. § 14–09–07. The purpose of the statute is to protect the noncustodial parent's visitation rights. *Zeller v. Zeller*, 2002 ND 35, ¶ 4, 640 N.W.2d 53. The best interest of the child is the primary consideration in determining if the custodial parent should be permitted to change the child's residence to another state. *Id.* The trial court's decision whether a proposed move to another state is in the best interest of the child is a finding of fact that will not be overturned on appeal unless it is clearly erroneous. *Dickson v. Dickson*, 2001 ND 157, ¶ 8, 634 N.W.2d 76.

[¶ 11] To determine whether the move is in the children's best interests, the court must apply a four-factor analysis, enunciated by this Court in *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903, and refined in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life;

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent;

3. The integrity of the noncustodial parent's motives for opposing the move; and

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if reloca-

tion is allowed, and the likelihood that each parent will comply with such alternate visitation.

No single factor is dominant, and a minor factor in one case may have a greater impact in another. *Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶ 8, 681 N.W.2d 762. When the relevant factors weigh in favor of the custodial parent's request to relocate the children, the trial court's denial of the motion constitutes reversible error. *Zeller v. Zeller*, 2002 ND 35, ¶ 6, 640 N.W.2d 53.

A

[¶ 12] The first factor to consider is the prospective advantages of the move in improving the custodial parent's and child's quality of life. With regard to this issue, the trial court found:

[Roll's] new husband had attempted to earn a living in Wyoming in his chosen field by working in the construction trade as a general contractor and home builder, but there wasn't enough work in Wyoming to keep him busy. He was laid off, and, after three months of no work, he returned to California, [where] he had worked previously, and secured a much better paying job in his chosen field in an area where there are substantial opportunities to remain employed. [Suzanne Roll] also found herself without a job, after being laid off from the job she had obtained after her move to Wyoming.... The move to California will provide her and her husband with better job opportunities in their chosen fields and also allow each to earn substantially more. They were struggling financial[ly] in Wyoming.... The move to California will enable [Roll] and her husband to provide a two-parent home for the children with sufficient income to meet the children's needs and pay for

the increased cost of transporting the children for their visits with their father.

There are also non-economical advantages that support allowing the move. The children will have more activities in which to participate year around. There are also better medical facilities in California, than Wyoming, to treat and care for the child with diabetes. The community in which [Roll] and her husband plan on living also has good schools, that are better equipped to deal with treating the middle child's diabetes. [Roll's] husband's daughter from a former relationship lives in California, along with his parents, three brothers, three sisters, their children and many other of his relatives. The children get along great with [Roll's] husband and his daughter, and the move will provide them an opportunity to meet and interact with more of their step-father's relatives.

[¶ 13] We conclude these findings are supported by the evidence and are not clearly erroneous. Under this first relocation factor, it is appropriate for the trial court to weigh the advantages of the requested move while recognizing the importance of maintaining continuity and stability in the custodial family. *Dickson v. Dickson*, 2001 ND 157, ¶ 12, 634 N.W.2d 76. The court must give due weight to the possibility the move will enhance both the economic and non-economic aspects of the custodial family's life. *Id.* Although the emphasis on continuity and stability pertains primarily to the custodial parent-child relationship, this Court has recognized that a stepparent naturally takes on a family relationship with the children of a spouse and, consequently, the circumstances of each are interrelated. *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 11, 591 N.W.2d 144. In that regard, we have recognized the importance of a move so a custodial family can stay together as a

unit, thereby maintaining the continuity and stability of the integrated family unit. *Id.* When a stepparent's career takes him or her out of state to secure a job, allowing the spouse and the spouse's children to also relocate to that place is crucially important to maintaining family continuity and stability. *Tibor v. Tibor,* 1999 ND 150, ¶ 14, 598 N.W.2d 480.

B

[¶ 14] The second factor to consider in deciding whether relocation should be allowed is the integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent. With regard to this factor the trial court found:

> [Roll] has allowed [Frieze] all the visits he's entitled to under the judgment and more, despite [Frieze's] demanding nature and verbally abusive past. She understands the children love their father and believes it's important to the children they have a relationship with their father.... [Roll] could not foresee and played no part in the loss of her job in Wyoming, nor could she have known of the limited opportunities her husband would have in Wyoming to pursue his construction career. These facts indicate [Roll's] motive for moving has nothing to do with any desire to interfere with [Frieze's] relationship with their children.

We conclude these findings by the trial court are supported by the evidence and are not clearly erroneous.

C

[¶ 15] The third factor to consider in deciding whether a move should be allowed is the integrity of the noncustodial parent's motives for opposing the move. With regard to this factor the trial court

made the following relevant findings of fact:

> [Frieze] may have resisted the move, not out of a good-faith desire for the well-being of his children, but rather simply to augment his motion for custody.... He ... made claims that he was denied visits to which he was entitled under the judgment, which claims were not supported by his own testimony.

> Nonetheless, even if [Frieze's] resistance to the move was out of concern for the well-being of his children, that is not, by itself, the sole consideration of what is in the children's best interest.

The court's findings on this issue are not clearly erroneous. While the court found Frieze may have resisted the move to support his motion for change of custody, the court also recognized that Frieze's opposition to the move could be out of legitimate concern for the well-being of the children and the continued opportunity for meaningful visitations with the children.

### D

[¶ 16] The fourth factor to consider in deciding whether to allow a move is the potential negative impact on the relationship between the noncustodial parent and the child and whether there is a realistic opportunity for visitation which can serve to preserve and foster the noncustodial parent's relationship with the child. Regarding this factor the district court found:

> Though some animosity does exist between the parties, the amount of animosity appears to be less than that which existed when the parties were married and lived together, and the parties have cooperated sufficiently after their divorce to allow [Frieze] all the visits to which he was entitled under that judgment, as well as other discretionary visits that [Frieze] requested.... [T]he judgment has been amended to mandate that [Frieze] be allowed up to five day visits in California any time during the school year, in addition to those specified in the judgment, provided [Frieze] gives at least 20 days written notice to [Roll] in advance of each request for a visit in California.

> [T]he judgment has been amended to allow the same visits as under the original judgment, with some adjustments to accommodate the greater distance that now exists between the parties. These amendments actually allow[ ] [Frieze], if he exercises all the visits, more time with the children, because of the longer extended school breaks the children will receive in California during the school year. Though summer vacation will be shorter by a few weeks, that time has been made up by eliminating [Roll's] right to have the children for a two week period in the middle of the summer and the extra days from the other more extended breaks during the school year. [T]his Court has obligated [Roll] to pay for seventy-five percent of the visitation transportation expenses of the children for the visits ordered to occur in North Dakota....

> Any problems that existed with [Frieze's] telephone contact with the children, will also likely be minimized by the move to California, because of the hour difference in time.... In addition, this Court has ordered in the amended judgment each party make the children available for telephone contact with the other parent during specific times during the first and third week of each month. Unless [Frieze] elects to continue to call at the wrong times, this should help solve the past problems with telephone contact with the children.

[¶ 17] We conclude these findings by the trial court are supported by the evidence and are not clearly erroneous.

The court made significant amendments to the visitation structure to ensure there is a continued realistic opportunity for Frieze and the children to preserve and foster their relationship. The restructured visitation actually allows more time for Frieze and the children to be together if he exercises all of his visits. The court required Roll to pay for 75 percent of the transportation costs for visits to North Dakota. The court also imposed additional safeguards to ensure that Frieze has ample opportunity to be in telephone contact with the children. A move which is sought in good faith to gain legitimate advantages for the custodial parent and the children must not be denied simply because visitation cannot continue in the existing pattern. *Hentz v. Hentz*, 2001 ND 69, ¶ 7, 624 N.W.2d 694. The visitation schedule which provides less frequent, but extended, visitation periods will preserve the noncustodial parent's ability to foster and develop a relationship with the child. *Tibor v. Tibor*, 1999 ND 150, ¶ 24, 598 N.W.2d 480.

E

[¶ 18] In its analysis of the *Stout* factors, the trial court stated that although no single factor was dominant, in this case all the factors favored allowing the move. The court concluded that allowing the move would recognize the importance of keeping the custodial family intact and that the best interests of the children are implicitly interwoven with the quality of life of the custodial parent. Upon reviewing the record, we conclude there is evidence supporting the trial court's analysis of the factors and its decision to grant Roll's request to move with the children to California. The court's decision is supported by the evidence and is not clearly erroneous.

IV

[¶ 19] Roll has requested this Court to award her attorney fees under N.D.R.App.P. 13 as a sanction for Frieze's failure to identify or reference in the appendix the facts that were in dispute, as required under N.D.R.App.P. 28(b)(6) and (f). Roll asserts her attorney had to spend a substantial amount of time reviewing the record to identify the disputed facts, but she did not itemize or identify the additional hours which were allegedly necessitated by Frieze's failure to specifically identify the facts in dispute. Frieze's brief includes numerous references to the appendix and hearing transcript in support of his statement of facts. Under these circumstances, we conclude Roll is not entitled to an award of attorney fees as a sanction under N.D.R.App.P. 13.

[¶ 20] Roll also requests attorney fees under N.D.C.C. § 14-05-23, which provides:

During any time in which an action for separation or divorce is pending, the court, upon application of a party, may issue an order requiring ... payment of attorney's fees.

Under this section we have concurrent original jurisdiction with the district court to award attorney fees on appeal. *Christianson v. Christianson*, 2003 ND 186, ¶ 24, 671 N.W.2d 801. We prefer that the district court initially decide the issue of attorney fees, and when a party makes a motion under this statute for an award of attorney fees on appeal, we generally remand the issue to the district court for a determination. *Id.* Accordingly, we remand this case to the district court for the limited purpose of determining whether attorney fees should be awarded to Roll on appeal and, if so, in what amount.

## V

[¶ 21] We hold the trial court did not err in denying Frieze's motion for a change of custody and did not err in granting Roll's motion for a change of residence. We, therefore, affirm the district court's order and the amended judgment and remand for determination of Roll's request for attorney fees on appeal.

[¶ 22] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM, J.

I concur in the result.