# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 197

Brian Lee Woelfel, Jr.,                                Plaintiff and Appellee

v.

Abbey Lynn Gifford,                             Defendant and Appellant

## No. 20190331

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Tristan J. Van de Streek, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Leah J. duCharme, Fargo, ND, for plaintiff and appellee.

Jacey L. Johnston (argued) and Olivia A. Jureidinim (on brief), Grand Forks, ND, for defendant and appellant.

**Crothers, Justice.**

[¶1]   Abbey Gifford appeals from a judgment granting her and Brian Woelfel equal residential responsibility for their minor child and determining child support. We conclude the district court erred by including an "automatic" change of custody provision that purports to modify the original residential responsibility decision without consideration of the child's best interests at the time of a potential move. We reverse and remand for further proceedings.

I

[¶2]   Gifford and Woelfel are the parents of K.L.W., born in 2016. In December 2018 Woelfel commenced this action to establish the parties' parental responsibilities for the child. The district court held a three-day trial in July and August 2019. After trial, the district court entered findings of fact, conclusions of law, and order for judgment granting the parties equal residential responsibility and shared parenting time.

[¶3]   In awarding equal residential responsibility, the district court stated: "So long as both parties reside in Fargo, it is in K.L.W.'s best interests for him to continue to reside in Fargo and for [Gifford and Woelfel] to continue with equal residential responsibility and shared parenting time. . . . If [Gifford] relocates more than 45 miles from Fargo, it is in K.L.W.'s interests to primarily reside with [Woelfel], in Fargo." The court included a provision in the judgment that "[i]f [Gifford] relocates more than 45 miles away from [Woelfel's] home, [Woelfel] shall have primary residential responsibility of K.L.W." The court's parenting time schedule provides that the parties will share parenting time equally, but includes contingent provisions if the parties reside or are living in communities more than 45 miles apart.

[¶4]   When determining child support, the district court offset each party's respective obligations because it awarded equal residential responsibility, ordering Gifford to pay Woelfel monthly child support of $285. The court also

ordered, "If [Gifford] relocates . . . to Grand Forks, the offset should not apply, and [Gifford's] monthly child support obligation shall be $669 per month."

## II

[¶5]  Gifford argues the district court erred in awarding equal residential responsibility and failed to conduct a proper analysis of the best-interest factors.

[¶6]  Our review of the district court's residential responsibility decision is well established:

> "A district court's decisions on [primary residential responsibility] . . . are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a [primary residential responsibility] case or substitute our judgment for a district court's initial [primary residential responsibility] decision merely because we might have reached a different result. A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult [primary residential responsibility] decision involving two fit parents."

*Lessard v. Johnson*, 2019 ND 301, ¶ 12, 936 N.W.2d 528 (quoting *Grasser v. Grasser*, 2018 ND 85, ¶ 17, 909 N.W.2d 99). "The court is not required to make separate findings for each best interest factor, but the court's findings must contain sufficient specificity to show the factual basis for the primary residential responsibility decision." *Lessard*, at ¶ 13 (citing *Rustad v. Baumgartner*, 2018 ND 268, ¶ 4, 920 N.W.2d 465). *See also* N.D.C.C. § 14-09-06.2(1)(a)-(m).

[¶7]  Gifford mainly raises factual arguments regarding each contested factor, pointing to evidence she claims the district court overlooked or ignored. She argues the district court erred by failing to consider evidence supporting her

and disregarding evidence supporting Woelfel in deciding that best-interest factors (d), (e), (h), (k), and (m) favored Woelfel. She further argues the court erred in deciding best-interest factors (a), (b), (c), (f), (g), and (j) were neutral when a consideration of "all evidence" supports finding these factors weighed in her favor.

[¶8] By arguing the district court erred in finding various factors either favored Woelfel or were neutral, Gifford seeks to have this Court reweigh the evidence and find the factors either favored her or were neutral. She asserts Woelfel has problems with anger and alcohol use and the court erred in finding the domestic violence presumption was not triggered. We disagree.

[¶9] The district court considered the evidence and made extensive findings on each best-interest factor after viewing the evidence and witnesses at trial, and we will not second-guess its credibility determinations. Based on our review, the court did not clearly err in awarding equal residential responsibility and shared parenting time. However, as discussed below, the district court may need to reconsider its equal residential responsibility decision because the court included an "automatic" change to Woelfel having primary residential responsibility if Gifford moves more than 45 miles from Fargo.

### III

[¶10] Gifford argues the district court erred by ordering an automatic change of custody if she moves more than 45 miles from Fargo.

[¶11] Although the district court awarded equal residential responsibility and shared parenting time, the judgment states: "If [Gifford] relocates more than 45 miles away from [Woelfel's] home, [Woelfel] shall have primary residential responsibility of K.L.W." The parenting time schedule also provides for contingencies if the parties are living more than 45 miles apart. Similar language is contained in the court's order for judgment. The order states: "If [Gifford] relocates to Grand Forks, the offset should not apply, and [Gifford's] monthly child support obligation shall be $669 per month."

3

[¶12] Gifford argues the "automatic" change in custody provision circumvents the post-judgment limitations on modification of custody under N.D.C.C. § 14-09-06.6, and the provision is unenforceable. *See Zeller v. Zeller*, 2002 ND 35, ¶¶ 17-20, 640 N.W.2d 53 (holding the district court erred in accepting a stipulated divorce provision that automatically transferred custody upon the occurrence of a future event).

[¶13] In *Zeller*, 2002 ND 35, ¶ 2, the parties agreed that if one parent's employer transferred that parent out of the state, the transfer would constitute a material change in circumstances and would transfer primary residential responsibility to the other parent. This Court concluded a stipulated divorce provision for an automatic change in residential responsibility on the occurrence of a future event is unenforceable and the district court retains control over the rights of children, regardless of a contrary agreement. *Id.* ¶¶ 17-18. This Court held the district court erred in holding the parties' stipulation was "law of the case" and binding on the court's award of primary residential responsibility. *Id.* at ¶ 19; *see also Hageman v. Hageman*, 2013 ND 29, ¶ 36, 827 N.W.2d 23 (recognizing "that any stipulated judgment precluding modification of primary [residential] responsibility violates public policy."). We acknowledge this case presents a different situation, but the public policy concerns are as significant.

[¶14] Section 14-09-06.6, N.D.C.C., governs the post-judgment modification of primary residential responsibility and provides the court's modification standard. *See Dickson v. Dickson*, 2018 ND 130, ¶ 7, 912 N.W.2d 321; *Mairs v. Mairs*, 2014 ND 132, ¶ 7, 847 N.W.2d 785. "When the parents have joint or equal residential responsibility, however, an original determination to award 'primary residential responsibility' is necessary." *Dickson*, ¶ 7 (quoting *Mairs*, ¶ 7).

[¶15] Here, the district court decided the parties should have equal residential responsibility and shared parenting time. However, the judgment also provides for a future "automatic" modification of its equal residential responsibility determination with an award of primary residential responsibility to Woelfel, without analysis under the best-interest factors at the time of Gifford's possible

4

relocation. The court's provisions essentially seek to control a future determination on primary residential responsibility, regardless of when Gifford's "imminent" relocation to Grand Forks would occur.

[¶16] While we may be inclined simply to strike the automatic change of residential responsibility provisions and affirm the judgment as modified, the parenting plan and child support award also contain contingent language based on whether Gifford relocates. We therefore reverse and remand for the district court to consider awarding either equal residential responsibility to both parents or primary residential responsibility to one parent without the automatic change of residential responsibility provisions. A recalculation of child support also may be necessary.

IV

[¶17] Gifford argues the district court improperly imputed wages to Woelfel when evidence reflected a much greater earning capacity, personal budget, and cash flow. She argues the court erred by imputing Woelfel's wage to that of a construction laborer.

[¶18] We review child support decisions under the following standards:

> "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. The district court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation."

*Minyard v. Lindseth*, 2019 ND 180, ¶ 6, 930 N.W.2d 626 (quoting *Thompson v. Johnson*, 2018 ND 142, ¶ 8, 912 N.W.2d 315).

[¶19] The guidelines in N.D. Admin. Code ch. 75-02-04.1 govern child support decisions. *Minyard*, 2019 ND 180, ¶ 7. "A correct finding of an obligor's net income is necessary to calculate the proper amount of child support." *Id.* "Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the [district]

court" of the obligor's income. N.D. Admin. Code § 75-02-04.1-02(7). "Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code § 75-02-04.1-02(9). "After establishing the obligor's net income, the court applies that amount to the guidelines to calculate child support." *Minyard*, at ¶ 7. The child support amount calculated under the guidelines "is rebuttably presumed to be the correct amount of child support in all child support determinations." N.D. Admin. Code § 75-02-04.1-13; *see also* N.D. Admin. Code § 75-02-04.1-09(1).

[¶20] Under N.D. Admin. Code § 75-02-04.1-07(1), "earnings" and "underemployment" are defined as follows:

> "a. 'Earnings' includes in-kind income and amounts received in lieu of actual earnings, such as social security benefits, workers' compensation wage replacement benefits, unemployment insurance benefits, veterans' benefits, and earned income tax credits; and
> b. An obligor is 'underemployed' if the obligor's gross income from earnings is significantly less than this state's statewide average earnings for persons with similar work history and occupational qualifications."

Under N.D. Admin. Code § 75-02-04.1-07(3), "gross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed":

> "a. A monthly amount equal to one hundred sixty-seven times the hourly federal minimum wage.
> b. An amount equal to six-tenths of this state's statewide average earnings for persons with similar work history and occupational qualifications.
> c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve consecutive months included in the current calendar year and the two previous calendar years before commencement of the proceeding before the court, for which reliable evidence is provided."

6

*See also* N.D. Admin. Code § 75-02-04.1-07(2) ("An obligor is presumed to be underemployed if the obligor's gross income from earnings is less than the greater of: a. Six-tenths of this state's statewide average earnings for persons with similar work history and occupational qualifications; or b. A monthly amount equal to one hundred sixty-seven times the federal hourly minimum wage.").

[¶21] The district court made findings regarding its child support calculations. The court found Gifford's presumptively correct guideline child support amount was $669 per month. For Woelfel, the court relied on his tax returns from 2016 through 2018 and found he was underemployed. The court applied N.D. Admin. Code § 75-02-04.1-07(3)(b) to impute income to him of $24,210, using 60 percent of the statewide average earnings of a similarly suited construction laborer. This resulted in a presumptively correct guideline amount of $384 per month. Because the court awarded equal residential responsibility, under N.D. Admin. Code § 75-02-04.1-08.2 the court offset the amounts and ordered Gifford to pay $285 per month for child support.

[¶22] In her post-trial brief, Gifford argued Woelfel's tax returns show he is underemployed and his returns are unreliable for computing child support. She argued the "construction manager" occupational profile most closely matched his duties and responsibilities at his contracting business, and the court should use the statewide average for a construction manager with a mean experience level. She asserted the court should impute income of $65,784, constituting six-tenths of the prevailing rate. After considering a tax credit, she claimed Woelfel's monthly child support obligation should be $812.

[¶23] On appeal, Gifford is critical of the district court's child support calculations but her legal arguments are less than clear. She argues the district court erred by imputing to Woelfel the wage of a construction laborer. She contends the court erred in applying N.D. Admin. Code § 75-02-04.1-07, because he is not a "laborer" but rather owns and manages Woelfel Construction, LLC. She argues the court did not consider in-kind income he receives from his business. *See* N.D. Admin. Code § 75-02-04.1-07(1)(a). She also asserts that Woelfel's monthly budget exceeds the amount he is

7

purportedly making from his business and that he did not provide reliable information for establishing his income for child support calculations.

[¶24] While not specifically making the argument, Gifford suggests the district court erred in determining Woelfel's net income from self-employment, which would involve application of N.D. Admin. Code § 75-02-04.1-05. Without deciding whether an error was made, "[i]f the tax returns do not reasonably reflect self-employment income, the guidelines require use of profit and loss statements." *Thompson*, 2018 ND 142, ¶ 16 (citing N.D. Admin. Code § 75-02-04.1-05(3)). Because we are reversing the residential responsibility finding which may alter the child support obligation, the district court is not constrained by law of the case and may address Gifford's arguments regarding the proper child support calculation on remand.

V

[¶25] The judgment is reversed, and the case is remanded for further proceedings.

[¶26] Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Gerald W. VandeWalle
Jon J. Jensen, C.S.